## VICTOR–AMERICAN FUEL CO. v. PECCARICH.†

(Circuit Court of Appeals, Eighth Circuit. November 15, 1913.)

No. 3,976.

1. TRIAL (§ 420*)—DIRECTED VERDICT—MOTION—WAIVER.

Error, if any, in denying defendant's motion for a directed verdict at the close of plaintiff's testimony, is waived by the introduction of evidence by defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

2. COURTS (§ 356*)—RULINGS REVIEWABLE—DENIAL OF NEW TRIAL.

An order of a federal court, denying a motion for a new trial, is not reviewable.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. § 356.*]

3. TRIAL (§§ 349, 359*)—SPECIAL INTERROGATORIES—SUBMISSION—EFFECT OF ANSWERS—GENERAL VERDICT.

A trial court has common-law power, in its discretion, to submit special interrogatories for a jury's finding along with a general verdict, and the answers to such interrogatories will control when they clearly compel a different judgment from that which would follow the general verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 823–827, 857–860, 875, 877, 878; Dec. Dig. §§ 349, 359.*]

4. MASTER AND SERVANT (§ 297*)—INJURIES TO SERVANT—COAL MINE OPERATIVE—FALL OF ROOF—GENERAL VERDICT—SPECIAL INTERROGATORIES.

In an action for injuries to plaintiff while at work in a coal mine, constructing a wall separating certain entries, by the fall of a part of the roof, due to the alleged negligent shooting of coal pillars, the jury returned a general verdict for plaintiff together with special findings that the superintendent and his subordinate officers were guilty of the negligence specified, that the firing of the shots would have a tendency to loosen the roof, and that the defect in the roof was not of such a character as to be readily discoverable by ordinary inspection. *Held*, that the latter finding should be construed to mean that the defect in the roof was not so plainly obvious as to charge plaintiff with contributory negligence in going under it, and hence such findings were not in irreconcilable conflict with the general verdict.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. § 297.*]

5. MASTER AND SERVANT (§ 203*)—INJURIES TO SERVANT—MINERS—ASSUMED RISK.

Where plaintiff was injured by the fall of a portion of the roof of a coal mine while he was employed therein, due to shots fired in certain pillars in the vicinity of his working place, the fact that plaintiff had received no assurance from defendant that no shots would be so fired while he was working there was applicable only to the question of assumed risk and would not defeat his right of action.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543; Dec. Dig. § 203.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied January 16, 1914.

6. MASTER AND SERVANT (§ 258*)—INJURIES TO SERVANT—MINERS—FALL OF ROOF—COMPLAINT.

In an action for injuries to an employé in a coal mine by the fall of a portion of the roof, due to the alleged negligent shooting of pillars in the vicinity, complaint construed and *held* to state a cause of action.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836; Dec. Dig. § 258.*]

7. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—MINES—QUESTIONS FOR JURY.

In an action for injuries to an employé in a coal mine by the fall of a portion of the roof, evidence *held* to require submission to the jury of the question whether the firing of shots in certain pillars near where plaintiff was employed caused the roof to become unsafe and fall.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

8. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—NATURE OF DUTY.

Where plaintiff, an employé in a coal mine, was directed to wall up an entry to guard against black damp, and a canvas curtain had been erected to turn currents of fresh air into the place where plaintiff was employed, the fact that he was engaged in replacing the curtain, which for some reason had fallen, when he was injured by the fall of a part of the roof, was insufficient to show that he was not engaged in the line of his duty at the time of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

In Error to the District Court of the United States for the District of New Mexico; William H. Pope, Judge.

Action by Frank Peccarich against the Victor-American Fuel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Caldwell Yeaman, of Denver, Colo. (Frank E. Gove, of Denver, Colo., on the brief), for plaintiff in error.

L. J. Stark, of Denver, Colo. (George S. Klock, of Albuquerque, N. M., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

CARLAND, Circuit Judge. This suit was brought by Peccarich to recover damages for personal injuries received by him as an employé of the fuel company, and which he alleged were caused by its negligence. The fuel company has removed the case here, complaining that error intervened to its prejudice in the trial of the case, which resulted in a judgment in favor of Peccarich.

[1, 2] Before proceeding to consider the errors relied upon, we may observe that the motion for a directed verdict, made at the close of the plaintiff's testimony, was waived by the introduction of testimony by the fuel company, and that the ruling on the motion for a new trial is not reviewable.

In order to intelligently understand the discussion of the errors assigned, it is necessary to state briefly the facts which Peccarich alleged

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to be his cause of action. These facts are stated in the complaint as follows:

"Plaintiff further alleges that on the 12th day of August, A. D. 1909, while this plaintiff was in the discharge of his duty as the servant and employé of said defendant, and while this plaintiff was under the direction and order of said defendant, said defendant ordered and directed the plaintiff to go to the second right entry of one of its mines at Gibson, N. M., and which second right entry was an entry way connecting an old mine with the new mine, and the said defendant ordered and directed the plaintiff to build a wall at the place of the junction of the two aforesaid mines, which said wall would then and there wall up the second right entry connecting the said mines, and would stop the black damp emitted from the fire in the said old mine from coming through into the new mine, which said black damp would interfere with the men and employés of the said defendant working in the said new mine; that the said defendant on said day willfully, wrongfully, and negligently so misbehaved and conducted itself in this behalf that without warning or notice to the plaintiff, and while this plaintiff was in its service and constructing the said wall between the said old mine and the said new mine, caused, ordered, and permitted, and directed its servants and employés to go on and shoot in the pillars in the vicinity of the second right entry and in the vicinity where this plaintiff was building said wall to connect the said mines for the said defendant, and the said servants of the said defendant, yielding to said orders of such defendant, and pursuant to the permission and direction of the defendant, shot in the said pillars at the place aforesaid, and did then and there, by so shooting in the said pillars, weaken the roof at the junction point where this plaintiff was engaged in the construction of said wall as aforesaid, and by so shooting in said pillars by the said defendant and pursuant to its direction, permission, and order, the blanket and covering which had been hung up between and near the junction of the two said mines to prevent the black damp from coming through any part of the entry way between the two said mines and to convey air to the working place of this plaintiff, and which opening and aperture had not been walled up, fell, and while this plaintiff, in discharge of his duty, was attempting to put the said blanket and covering in its place in order to stop the said black damp coming through and to convey air to the working place of the plaintiff as aforesaid, and while plaintiff was engaged in handling the said blanket and covering, a rock then and there fell upon this plaintiff and severely and seriously and permanently injured plaintiff; that the said rock fell upon plaintiff and injured him as aforesaid solely through the negligence, carelessness, and gross want of care on the part of defendant in weakening the roof of the said mine by shooting in the pillars as aforesaid and directing and causing the same to be done through its order to its said employés and by giving permission to its said employés to so shoot in the said pillars without warning or notice to this plaintiff; and that the said injuries to this plaintiff were caused without any negligence on his part contributing thereto."

The jury, in addition to a general verdict for the plaintiff, answered, among others, the following special interrogatories submitted to them by the court:

No. 2. What person or persons was or were guilty of the act or acts of negligence specified? Answer: The superintendent or his subordinate officers.

No. 7. If a shot was fired, what effect did it have upon the roof at the place where the accident occurred? Answer: Would have a tendency to loosen the roof.

No. 9. Was any defect in the roof of such a character as to be readily discoverable by ordinary inspection? Answer: No.

[3] The fuel company moved the court for judgment in its favor

on the special findings, making special reference to those above set forth on the theory that they were inconsistent with the general verdict and should control the judgment to be rendered. The trial court had the common-law power, to be exercised in its discretion, to submit special findings to the jury along with the general verdict and these special findings must control when they clearly compel a different judgment from that which would follow the general verdict. Walker v. New Mexico, etc., R. Co., 165 U. S. 593, 17 Sup. Ct. 421, 41 L. Ed. 837; Walker v. Bailey, 65 Me. 354; Spurr v. Sheldon, 131 Mass. 429; Barstow v. Sprague, 40 N. H. 27; Richardson v. Weare, 62 N. H. 80; Clementson on Special Verdicts, 133–140.

In view of the claim made in brief of counsel for Peccarich that the ruling of the Supreme Court in Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, compelled a denial of the motion for judgment, we will say that the case is not in point. In the case cited it was held that in the federal courts a motion for judgment non obstante veredicto based on the evidence is unauthorized. In the case at bar the motion for judgment was not a motion non obstante veredicto based on the evidence, but for judgment in conformity to the findings of the jury which were matter of record.

[4, 5] We proceed now to consider whether the special findings above mentioned compel a judgment for the fuel company. It is claimed there was no evidence to support the answer given by the jury to interrogatory No. 2. This is not so. Tony Minrek and Mike Kezle both testified that Jennings, the superintendent, told them to fire the shot, and the jury so found in answer to interrogatory No. 6. There is certainly nothing in this answer that would compel a judgment for the fuel company. The answer to interrogatory No. 7 supports the general verdict. No general verdict could have been rendered unless the jury should find from the evidence that the firing of the shot was the proximate cause of the falling of the rock. It is claimed that the answer to interrogatory No. 9 prevents a recovery by the plaintiff. We think the contention that this interrogatory was submitted with reference to the duty of Peccarich and was so understood by the jury is the true view. The duty of the fuel company to use ordinary care to provide a reasonably safe place for Peccarich to work required the exercise of more care than would be required to discover defects in the roof of such a character as to be readily discoverable by ordinary inspection, and the court so charged. In reference to the duty of Peccarich, the court charged that if he knew that there was a defect in the roof, or it was so obvious to him that he could not but have known it, he would be deemed to have assumed the risk. Every presumption should be indulged in to support the general verdict, and if the special findings may be construed so as to support the general verdict the court should so construe them. In this view we think justice requires us to interpret the answer to interrogatory No. 9 as a finding that the defect in the roof was not so plainly obvious as to charge Peccarich with contributory negligence in going under the same. We therefore conclude there was no error in denying the motion for judgment made by the fuel company. There was no error in the refusal of the court

to charge as requested by counsel for the fuel company in instructions numbered 8, 9, and 14. There was no evidence that Peccarich received assurance from the fuel company that no shots would be fired in the pillars in the vicinity where he was working, but this did not necessarily defeat his right of action. The assurance, if made, would only affect the question of the assumption of risk.

[6] The sufficiency of the complaint was raised by motion in arrest of judgment; but we have no doubt that the complaint stated a cause of action, as is shown by the statement excerpted therefrom and found in this opinion.

[7] There remains to be considered the question as to whether the court erred in refusing to direct a verdict for the fuel company at the close of all the testimony. It is objected in this behalf that there was no evidence that a shot was fired. Minrek and Kezle hereinbefore mentioned both testified that a shot was fired, and the witness Leaden testified that a shot fired as the evidence tended to show would be bound to loosen the roof and the coal, and a witness for the defendant testified that a shot loaded in the way the testimony tended to show the shot in question was loaded would when fired cause an explosion which would have torn the coal in fragments. We think there was sufficient testimony introduced upon the question as to whether the firing of the shot caused the roof to become unsafe as to require the submission of the question to the jury. It must be admitted that the question is not free from difficulty, but it was for the jury to draw all legitimate and proper inferences from the testimony, and they have found against the fuel company upon this question. We think it would be a clear invasion of the province of the jury for this court to find to the contrary. It was a question in the solution of which the jury would have the right to bring to bear the common knowledge of men in regard to the explosion of powder and dynamite under the circumstances detailed in the evidence.

[8] It is next objected that the evidence showed that Peccarich was not in the line of duty at the time of the accident. We think there is no merit in this objection whatever. A decision by this court that he was not in the line of duty would be equivalent to holding that he must remain where he was at work building the wall and have his life gradually snuffed out by foul air, the same as the light in his cap. It is in evidence that this wall that Peccarich was building was a brattice wall, and that at the time of the accident Peccarich was as much of a brattice man as anything else. The canvas which fell and which he went to re-establish in the entry was used for turning the currents of fresh air into places where it was desired, and he would certainly have been guilty of contributory negligence had he not gone and hung the canvas up so as to, as he testifies, turn fresh air into the place where he was working.

It is next claimed that the evidence showed that Peccarich was guilty of contributory negligence. There is no merit in this assignment of error. In our judgment there was no evidence that Peccarich was guilty of contributory negligence, and, if there was any evidence upon the question, it was properly submitted to the jury and they have found otherwise.

The case was carefully and fully submitted to the jury in a charge that was not excepted to, and we have found no error which would warrant a reversal of the judgment. It is therefore affirmed.