NISBET, Commissioner of Safety, et al. v. FEDERAL TITLE & TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1915. Rehearing Denied February 24, 1916.)

No. 4304.

1. BANKRUPTCY ⊚══293(1)—DISTRIBUTION OF PROPERTY—POWERS OF COURT—CONFLICTING LIENS.

The administration and distribution of the property of bankrupts is a proceeding in equity, and property in the lawful custody of the court is held by it in trust for those to whom it rightfully belongs; if there are conflicting liens upon the property, the court has jurisdiction to determine their priorities, although the trustee has no interest in the question.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 411; Dec. Dig. ⊚══293(1).]

2. BANKRUPTCY ⊚══293—POWERS OF COURT—CONFLICTING CLAIMS TO PROPERTY.

Where an adverse claimant filed a petition in a bankruptcy court, asserting his ownership of property in possession of the court as that of the bankrupt, which petition was answered by other claimants, the court had jurisdiction, and was required to determine the ownership and to dispose of the property accordingly.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. ⊚══293.]

3. ATTACHMENT ⊚══302—INDEMNITY ⊚══14—CLAIMS OF THIRD PERSONS—ACTIONS BY CLAIMANT.

One whose property has been seized under an attachment against another may either intervene and assert his claim, or he may bring an action of replevin or trover against the officer who made the levy, and the judgment therein will be binding against the attachment plaintiff, where he has given bond to indemnify the officer, and especially where the latter has acted throughout under his directions.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1073–1082; Dec. Dig. ⊚══302; Indemnity, Cent. Dig. § 41; Dec. Dig. ⊚══14.]

4. ATTACHMENT ⊚══294—CLAIMS OF THIRD PERSONS—ACTIONS BY CLAIMANT.

Mills' Ann. St. Colo. 1912, § 3067, which provides that sales of personal property shall be presumed to be fraudulent and void as against creditors of the vendor, unless accompanied by immediate delivery and continued change of possession, does not preclude an owner of property from asserting his title against attachment creditors of one having the custody and manual possession of the property, in the absence of conduct amounting to fraud or deceit.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 999–1017; Dec. Dig. ⊚══294.]

5. ATTACHMENT ⊚══175—PROPERTY SUBJECT TO ATTACHMENT—INTEREST OF DEBTOR—"BONA FIDE PURCHASER."

Under the law of Colorado an attaching creditor does not occupy the status of a bona fide purchaser for value, and an attachment can only operate upon the right and title of the debtor at the time of the levy.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 518–523; Dec. Dig. ⊚══175.

For other definitions, see Words and Phrases, First and Second Series, Bona Fide Purchaser.]

In Error to the District Court of the United States for the District of Colorado; John A. Riner, Judge.

⊚══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action at law by the Federal Title & Trust Company against Alexander Nisbet, as Commissioner of Safety, etc., and others. Judgment for plaintiff, and defendants bring error. Affirmed.

July 21, 1913, Buffalo Bill's Wild West and Pawnee Bill's Great Far East, Combined, a corporation organized under the laws of the state of New Jersey, and hereinafter referred to as the circus corporation, was exhibiting in Denver. The property employed in its business was of two classes: That used strictly in the giving of its exhibitions, generally referred to as the show property; and also certain horses, wagons, railroad cars, circus paraphernalia, and equipment, commonly known as the "plant" or "plant equipment." The former class was the property of the circus corporation. The latter class was leased to that corporation by one Thomas A. Smith and one G. W. Lillie, under a written agreement dated June 6, 1912, and subsequently renewed for the season of 1913. Colonel W. F. Cody (Buffalo Bill) was vice president of the circus corporation, and Major G. W. Lillie (Pawnee Bill) was its president.

On the date first above mentioned the United States Printing & Lithograph Company of Cincinnati, Ohio, brought suit in the state district court at Denver to recover an alleged indebtedness of $66,000 against the said circus corporation, W. F. Cody, and G. W. Lillie as defendants, and caused the defendant Nisbet, as ex officio sheriff, to levy an attachment upon all the property, show, and plant hereinabove referred to. The next day, the defendants in error, Bonfils and Tammen, under the Colorado statute permitting other creditors to become parties in such attachment proceeding and have like remedies against the defendant to secure their claims or demands as the law gives to the original plaintiff, caused a subsequent attachment to be issued out of the same court and a levy to be made upon the same property by the said acting sheriff. It is provided by the statutes of Colorado that before issuing a writ of attachment the clerk of the court shall require a written undertaking on the part of the plaintiff or plaintiffs, in not less than double the amount claimed, to indemnify the defendant in the attachment suit against all damages that may be sustained by reason of the wrongful suing out of the attachment. It is conceded that all parties plaintiff, in the attachment proceeding referred to, complied in all things with the laws of the state of Colorado relating thereto, including the giving of the bonds in question.

On July 22d, G. W. Lillie executed a bill of sale to Thomas A. Smith for his interest in the plant property; but this action was subsequent to the attachment levies. Shortly thereafter, in the District Court of the United States for the District of New Jersey, a petition in bankruptcy was filed against the circus corporation, and, upon application to the District Court of the United States for the District of Colorado, Dewey C. Bailey, United States marshal for the District of Colorado, was appointed ancillary receiver. Upon his demand, pursuant to order of the district court, the sheriff turned over to him all of the aforesaid property attached as the property of said bankrupt circus corporation and its codefendants in the state court. Subsequently, the ancillary receiver, in due course, advertised the sale of said property; and thereupon Smith filed in the bankruptcy court a petition claiming the ownership of all of said property, and praying that it be restored to his possession. To this petition the plaintiffs in error, Bonfils and Tammen, filed answer denying the claim of Smith, asserting their own, and that of the sheriff, under the writs of attachment, and praying that all of the property be redelivered to the latter officer, or, in case a sale had been made, then that the proceeds of such sale be delivered to said sheriff, to be by him dealt with as the state court should order, and also for other proper relief. No formal appearance otherwise was entered by the sheriff, nor by the United States Printing & Lithograph Company, the original plaintiff in the attachment suit.

The issues thus joined were heard before the District Judge, and August 18, 1913, an order was entered adjudging the title to the show property, in the possession of the ancillary receiver, to be in the bankrupt corporation, awarding an undivided one-half interest in the plant property to the intervener, Smith, and declining to determine whether the claim of said Smith was prior or superior to the claim of the sheriff under the writs of attachment to the

remaining undivided one-half thereof. The receiver was further directed to tender the possession of all said property to the sheriff, and if the sheriff refused or failed forthwith to accept or receive the same, that the receiver should then deliver all of the plant property to Smith. The sheriff accepted this tender impressed with this judgment of the district court as to the ownership of the property involved. August 19, 1913, Smith executed to the Federal Title & Trust Company, defendant in error, a chattel mortgage upon all the plant property, and on August 22d that company made demand upon the sheriff therefor. Thereafter the sheriff, under order of the state court, offered for sale, and did sell for the sum of $34,185.50, an undivided one-half interest in the plant property as the interest of W. F. Cody and G. W. Lillie, as distinguished from the undivided one-half interest claimed by Smith as owner with said G. W. Lillie. The state court refused to confirm this sale, and, thereafter, upon application of all the plaintiffs in the attachment suit, said court. ordered all of said property sold before the final determination of that action. This order was executed by the sheriff, and all of the property was sold by him for the aggregate sum of $49,257.25. Thereupon the defendant in error brought this suit against the sheriff and against Harry H. Tammen, Frederick G. Bonfils, and the United States Printing & Lithograph Company, plaintiffs in the attachment suit, for conversion of the personal property alleged to have been wrongfully attached, taken and sold. The jury returned a verdict in favor of plaintiff against defendants Nisbet, Bonfils, and Tammen, awarding damages in the sum of $43,390.55; of this plaintiff remitted $7,-648.85, and judgment was entered in the sum of $35,741.70. In the course of the trial the following admission was made: "All the acts done by the sheriff, in levying upon this property, were done in the first instance pursuant to instructions received from the attorneys of the United States Printing & Lithograph Company, viz. Mr. Bottom, Mr. Redmond, and Mr. Marks. And two days thereafter, when Bonfils and Tammen joined in the attachment suit, every act done by the sheriff, pursuant to this matter, from that time on, was done under directions and instructions from both Bonfils and Tammen and the Lithograph Company, and their attorneys, Bottom, Redmond and Marks."

It is conceded that the same attorneys have at all times represented the sheriff and all attaching creditors both in the state court and in this court.

Adolph Marks, of Chicago, Ill., and John T. Bottom, of Denver, Colo. (Charles H. Redmond and Frederick P. Smith, both of Denver, Colo., on the brief), for plaintiffs in error.

Ernest Morris, of Denver, Colo. (William W. Grant, Jr., of Denver, Colo., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and AMIDON and VAN VALKENBURGH, District Judges.

VAN VALKENBURGH, District Judge (after stating the facts as above). Thirty-five errors were assigned to the action of the court below, and 14 were specified in the brief as relied upon by plaintiffs in error. Stripped of repetition and alternative statement, the following considerations are presented:

(1) That the court of bankruptcy was without jurisdiction to hear and adjudicate the claim of Thomas A. Smith as against third parties, to wit, the sheriff and attaching creditors; and, as an incident thereto, that the court erred in holding that the judgment of the bankruptcy court, in making the award to Smith, was binding upon plaintiffs in error; further, that Smith and his mortgagee should have been required to litigate the question of ownership in the state court.

(2) That the court erred in refusing to hold as matter of law that Thomas A. Smith and the plaintiff were estopped from asserting title to or interest in the property in question, and, in this connection, that certain evidence tendered by plaintiffs in error, was improperly excluded.

(3) That the court erred in directing a verdict for plaintiff and refusing to direct a verdict for the defendants.

(4) That the court erred in its charge respecting the measure of damages, that the verdict was excessive, and that a new trial should have been granted.

[1] It is well settled that, where the bankruptcy court has acquired lawful custody of property to which conflicting liens attach, it has jurisdiction to determine the priorities of such liens, though the trustee has no interest in such question; that the administration and distribution of the property of bankrupts is a proceeding in equity, and, when authorized by act of Congress, it becomes a branch of equity jurisprudence; that property in the custody of a court of equity for administration is always held by it in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine who the lawful owners are, and to that end to call before it all claimants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property in its custody, or in its proceeds, is a power inherent in every court of equity, incidental and indispensable to the authority to administer the property in its possession and to distribute its proceeds. These principles are announced and confirmed in many decisions of this court and of the Supreme Court. Chauncey et al. v. Dyke Bros. et al., 119 Fed. 1, 55 C. C. A. 579; In re Rochford, 124 Fed. 182, 59 C. C. A. 388; In re Schermerhorn, 145 Fed. 341, 76 C. C. A. 215; In re Eppstein, 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465; Mound Mines Co. v. Hawthorne et al., 173 Fed. 882, 97 C. C. A. 394; Clay v. Waters, 178 Fed. 385, 101 C. C. A. 645, 21 Ann. Cas. 897; Le Master v. Spencer, 203 Fed. 210, 121 C. C. A. 416; Wells & Co. v. Sharp, 208 Fed. 393, 125 C. C. A. 609; Galbraith v. Grocery Co., 216 Fed. 842, 133 C. C. A. 46; Abendroth v. Van Dolsen, 131 U. S. 66, 9 Sup. Ct. 619, 33 L. Ed. 57; Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; Murphy v. John Hoffman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327.

In the foregoing cases nearly every phase of the question presented is discussed and adjudicated. In Chauncey et al. v. Dyke Bros., supra, Judge Thayer made a comprehensive statement of the principle involved, which this court has often cited with approval:

"It will be conceded that the authority to try the issue which arose between the lien claimants, and to determine their respective priorities, could only be exercised by the bankrupt court in virtue of the fact that by the proceeding in bankruptcy it had acquired the custody of the res to which the controversy related. The bankrupt court had no right to assume jurisdiction of a controversy between third parties, in which the trustee was not concerned, and decide whose claim was paramount in equity, merely because the claimants happened to be creditors of the bankrupt estate, or merely because the liens affected a part of the bankrupt's property. The Bankruptcy Act confers no such authority. But if, in the exercise of its customary jurisdiction, the bankrupt court obtained the lawful custody of the res to which the liens related, or of a fund realized from its sale, then the duty, which was thereby devolved upon it, of distributing the fund among those to whom it rightfully belonged, did empower it to determine the relative priorities of the conflicting claims to the fund. A court which has lawfully acquired the custody of property or money must of necessity dispose of the same according to law; and, when conflicting claims are preferred, it is not bound to require the claimants

to litigate their claims in some other forum, and to adopt the judgment of that tribunal, although it may do so, but it is at liberty to dispose of such controversies according to its own ideas of right and justice. This is one of those incidental powers which may be exercised by any court of record, in the absence of an express prohibition."

[2] In the instant case both the show and plant property had long been in the possession of the bankrupt corporation, which had exercised dominion over it. It was attached by the Printing & Lithograph Company and by Bonfils and Tammen as the property of that corporation. Nisbet, the sheriff, levied upon it as such. When the petition in bankruptcy was filed, the liens created by these writs became subordinate to the provisions of the federal act (Act July 1, 1898, c. 541, 30 Stat. 544). In the exercise of its customary jurisdiction the court of bankruptcy ordered its receiver to take over all property held as that of the bankrupt. The usual demand was made upon the sheriff, who yielded a becoming obedience to the lawful mandate. The property was reduced to possession by the officers of the court, which thereby obtained the lawful custody of the res to which the claims in controversy related. Upon that court therefore devolved, not only the power, but the duty, to determine, by appropriate proceedings, to whom this property or any part of it rightfully belonged, and to make distribution and disposition accordingly. It decreed, and of this action there is no complaint, that the "plant" was not the property of the corporation. Thomas A. Smith intervened, and claimed that as his own. Bonfils and Tammen made voluntary answer to this intervening petition, denied its claim, and asserted a superior lien in the sheriff through attachment. To the extent of their own claim they represented the sheriff as fully as though that officer had been present in court.

It is true that a court of bankruptcy cannot make final disposition of property or funds in its possession as against third parties without affording to such, by proper notice or its equivalent, an opportunity to appear and assert their claims. Here, however, Smith, Bonfils and Tammen voluntarily appeared and submitted themselves to the jurisdiction of the court. They asked its judgment upon the issues joined. The challenge of the latter was directed at the claim of Smith, rather than at the jurisdiction of the court to decide between them. In any event, all these parties were before the court asserting a claim to property in its possession, and therefore, as to them, and as to the sheriff as representing Bonfils and Tammen, the requirements of due process were fully satisfied. Furthermore, if either party deemed himself aggrieved by the decree entered by the District Court, that decree was reviewable by appeal. Mound Mines Co. v. Hawthorne, 173 Fed. 882, 97 C. C. A. 394. None was taken. The property was turned back to the sheriff to be dealt with in accordance with the terms of that decree and otherwise in accordance with law; that officer accepted it and proceeded, originally, to sell subject to the adjudication of the court of bankruptcy. The state court, acting upon the representations of the attaching creditors, refused to confirm the sale thus made, and ordered all the property to be sold prior to final determination as that of the defendants in the attachment proceedings. This order was duly executed by the sheriff. Thereupon the defendant in

error, as mortgagee of the claimant Smith, brought this suit for conversion upon the ground that the property was that of Smith, and not of the defendants in the attachment suits.

[3] It will be remembered that it was admitted, in the course of the trial below, that every act done by the sheriff pursuant to this matter was done under directions and instructions from both Bonfils and Tammen and the Lithograph Company, the original attaching creditor. It was also admitted in the answer of plaintiffs in error that the sheriff was indemnified, before making the levy in the first instance, by statutory undertakings or bonds of indemnity, and that the defendants Bonfils and Tammen promised and agreed to save harmless that officer in any action he might take at their direction under and by virtue of the writs of attachment by them sued out. Under such circumstances, the right of the plaintiff below, the defendant in error here, to maintain this action is sustained by abundant authority, state and federal, and particularly in the jurisdiction in which this cause of action arose. When the property of a party is seized under a writ of attachment against another party, the owner is not confined in his remedy to intervention in the attachment suit. He may intervene, or he may bring suit in replevin or trover for conversion in any court of competent jurisdiction. Schluter v. Jacobs, 10 Colo. 449, 15 Pac. 813; Wilde v. Rawles, 13 Colo. 583, 22 Pac. 897; Carpenter v. Innes, 16 Colo. 165, 26 Pac. 140, 25 Am. St. Rep. 255; Hannan v. Connett, 10 Colo. App. 171, 50 Pac. 214. The attaching creditor, by giving a bond of indemnity to the sheriff, and still more where the sheriff acts under his directions and instructions, becomes liable as joint trespasser with that officer under the attachment. Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129; Woodworth v. Gorsline, 30 Colo. 186, 69 Pac. 705, 58 L. R. A. 417. In the latter case it is further held that the judgment in a replevin suit determines as against all parties and privies the right to the possession of the property, and that such judgment for the return of property levied on by execution is conclusive against the plaintiffs in the execution who gave the sheriff an indemnity bond to make the levy. The same rule is, of course, applicable to a case of sale under a wrongful attachment.

The distinction between the case at bar and that of a suit on the attachment bond as in Emerson & Co. v. Converse, 106 Iowa, 330, 76 N. W. 705, is apparent. This action was brought originally, not only against the sheriff and Bonfils and Tammen, but against the United States Printing & Lithograph Company as well. The latter company demurred to the complaint, challenging the jurisdiction of the court upon the ground that the plaintiff was a citizen and resident of Pennsylvania and the defendant Printing & Lithograph Company was a citizen and resident of the state of Ohio. The demurrer was sustained, and that defendant is not before this court. The other defendants, however, appeared and answered. They had every opportunity to defend in their own right and in that of any interest represented by them. Whether or not the original order of the court of bankruptcy, awarding an undivided one-half interest in the property to Smith, was binding upon the sheriff, need not, therefore, be considered. The

court below had jurisdiction of the present controversy, and the judgment was binding on the plaintiffs in error, unless invalidated by some other of the errors assigned.

But complaint is made that the trial court treated said order as binding upon all the defendants before it, and predicated thereon its direction to the jury to find for the plaintiff in some amount. Neither the charge itself nor an examination of the record sustains this contention. The court did say that the one-half interest involved was decreed to Smith as against the defendants Bonfils and Tammen, but it went farther than that. It said:

"When we come to look at the testimony, we have upon this question the testimony of two witnesses. Colonel Cody testified that this property was owned by Major Lillie and Mr. Smith, but in just what proportion he did not know. Smith testified that he owned a half interest in the property, and went into detail concerning his interest. Now there is not a scintilla of evidence in this case to dispute that testimony, as I view the case. Therefore the court instructs you, as I stated a moment ago, the plaintiff is entitled to recover one-half the property upon which this mortgage was given."

The record supports the trial court in this respect. The evidence upon this point is so clearly preponderant, and of such a conclusive character, that a directed verdict, in the exercise of sound judicial discretion, was justified. Railway Co. v. Oleson, 213 Fed. 329, 130 C. C. A. 31.

[4] It is further contended by plaintiffs in error that the plaintiff below, as mortgagee of Thomas A. Smith, is estopped from claiming title to the property in question as against the attaching creditors because of the acts of the mortgagor in permitting the property to be held out to the world, and particularly to said creditors, as the property of the owner or owners of the exhibition. The court below declined to take this view, and its action is assigned as error. Reliance is placed upon section 3067 of the Colorado Statutes, which provides:

"Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and this presumption shall be conclusive."

It should be noted at the outset that the ruling of the court, as to the ownership of an undivided one-half interest by Smith, was not based upon the bill of sale from Lillie to Smith of July 22, 1913. On the contrary, the court expressly held that that transfer was subordinate to the lien of the attachment writs. It is further to be noted that the chattel mortgage of defendant in error is relied upon only as conveying an interest of Smith which was superior to and unaffected by any rights flowing from these attachments. The evidence is that Smith was the original owner of this one-half interest in the plant property; that he, in company with Lillie, leased the plant property to the circus corporation. It is true that that corporation exercised dominion over the property, and the same was appropriately labeled to indicate its connection with the circus exhibition. The

uncontroverted proofs are that this was entirely in accord with the custom of the business in which the property was used. In such cases, the sale statute quoted above has no application. In the absence of conduct amounting to fraud or deceit, the owner of the property will not be precluded from asserting his title against the creditors of one having the custody and manual possession thereof. Such is the uniform holding of the Colorado courts. Singer Mfg. Co. v. Converse, 23 Colo. 247, 47 Pac. 264; Same v. Bohen, 31 Colo. 444, 72 Pac. 1097; Morsch v. Lessig, 45 Colo. 168, 100 Pac. 431.

[5] Furthermore, in Colorado an attaching creditor does not occupy the status of a bona fide purchaser for value, and an attachment can only operate upon the right and title of a debtor existing at the time of the levy. Banks & Bros. v. Rice et al., 8 Colo. App. 217, 45 Pac. 515; McMillen v. Gerstle, 19 Colo. 98, 34 Pac. 681; Gates Iron Works v. Cohen, 7 Colo. App. 341, 43 Pac. 667; Mining & Milling Co. v. Lambert et al., 15 Colo. App. 445, 62 Pac. 966; In re Appel Suit & Cloak Co. (D. C.) 198 Fed. 322–325. So that, if the leased property in controversy actually belonged to Smith, it was unaffected by the levies under which plaintiffs in error claim.

These considerations dispose, in large measure, of the assignments of error predicated upon the exclusion of evidence. Furthermore, these alleged errors were not properly preserved as required by the rules of this court which provide that:

"When the error alleged is to the admission or to the rejection of evidence, the assignments of error shall quote the full substance of the evidence admitted or rejected."

However, an examination of the excluded evidence discloses that it is largely hearsay in its nature and otherwise negative and immaterial in character. We perceive no substantial error in its rejection.

It is urged that the court erred in its charge respecting the measure of damages. It said:

"I think in no possible view of the case, under the evidence, the amount that you find should be less than one-half of the amount the property was actually sold for. It was certainly worth that, because it brought that; and if you believe that on the date of the levy of the writ of attachment it was worth more than that, you are entitled to so find, if you can base your finding upon he evidence given upon the trial of the cause."

It is objected that the price at which the property was actually sold by the sheriff furnished no criterion of its actual value at the date of the levy. Whatever merit there may be in this contention is rendered immaterial by other language of the court, and by the subsequent action of the jury. Later in its charge the court said:

"The mortgagee is entitled to recover its value at the time of the levy of the attachment. Whatever that value may be you are to determine from the evidence in the case. Counsel discussed the testimony of several witnesses bearing upon that question. I leave that question to you, to exercise your good judgment, and return such amount as you can say the half interest in this property was fairly worth at the time of the levy."

The entire property was sold for $49,257.25; one-half that amount is $24,628.63. The jury returned a verdict for $43,390.55, far in ex-

cess of the minimum suggested by the court. There was testimony fixing the value of the entire property as high as $91,000. It was so inventoried by plaintiffs in error only a short time prior to the attachment. The plaintiff having remitted $7,648.85, judgment was entered in the sum of $35,741.70, and of this plaintiffs in error cannot reasonably complain. It is well settled that this court will not review the action of a trial court in overruling a motion for new trial. Victor-American Fuel Co. v. Peccarich, 209 Fed. 568, 126 C. C. A. 390.

No prejudicial error is disclosed in the record, and the judgment is accordingly affirmed.