National Bank of Commerce of Norfolk, Appellee, v.
J. W. Council et al. H. S. Merrell, Appellant.

Gen. No. 44,537.

Opinion filed January 24, 1950. Released for publication March 9, 1950.

GREGORY, GILRUTH & HUNTER, of Chicago, for appellant; ROBERT L. HUNTER, of Chicago, of counsel.

PHILIP A. WINSTON, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

H. S. Merrell, Trustee in Bankruptcy of the estate of Joseph William Council by appointment of the District Court of the United States for the Eastern District of North Carolina, Wilson Division, in bankruptcy cause No. 590, appeals from a judgment order entered in the Circuit court of Cook county.

On November 3, 1947, National Bank of Commerce of Norfolk, Norfolk, Virginia, (hereafter referred to as the Bank), filed its complaint in the Circuit court of Cook county alleging that J. W. Council was indebted to it by virtue of a certain note dated August 18, 1947, in the principal sum of $7,388.24, which sum was past

586

due. At the same time the Bank filed an affidavit for attachment and an attachment writ issued to attach any funds due Council. Weber Costello Company, a corporation, was summoned as garnishee, and subsequently it stated, in answer to interrogatories, that: "1. It holds indebtedness in the sum of $4811.28, representing commissions *due J. W. Council* on account of orders obtained by him and shipped to respective customers; 2. Indebtedness in the sum of $200.25 representing commissions due J. W. Council on account of orders obtained by him and having been shipped and payment having been made therefor after the date of service; 3. Said J. W. Council obtained certain orders for garnishee's products, shipped to various customers, but payment not made in amount of $192.40. J. W. Council obtained orders which had not been accepted. Goods not shipped and commissions when accepted and shipped total $1372.50." On December 12, 1947, which was within four months of the issuance of the attachment writ, Council filed his petition in bankruptcy in the United States District Court for the Eastern District of North Carolina, Wilson Division, and he was adjudicated a bankrupt on December 13, 1947. When the Weber Costello Company filed its answer to the interrogatories, it also filed a countercomplaint, which admits that it owed Council, at the time of the service of the attachment writ, $4,811.28, that Council has demanded all commissions due him, and prays that Council and the Bank may settle their demands between themselves and that the court shall determine to whom the money should be paid. On March 22, 1948, it was ordered that Weber Costello Company pay to the Clerk of the Circuit court $5,178.68, which sum was to be subject to the order of the court. The judgment order entered by the trial court orders the Clerk of the court to pay to the Bank "out of the monies deposited by the counter-plaintiff" $3,026.86

and costs, and "that the Trustee in Bankruptcy is entitled to receive all funds in the *possession* of Weber Costello Company in excess of the sum of $3,026.86 *to be administered by the Court of his appointment.*" The Trustee appeals from that judgment order. The countercomplaint was filed two days after Council had been adjudged a bankrupt in the North Carolina court. On December 26, 1947, the Bank filed its answer to the countercomplaint, in which it set up that on June 4, 1946, Council had executed an assignment wherein he assigned to the Bank commissions due him from Weber Costello Company to secure his indebtedness to the Bank; that the assignment was in the amount of $3,026.86; that notice was given to Weber Costello Company of the assignment; that that Company acknowledged receipt of the assignment and agreed to pay to the Bank all commissions due Council on shipped orders totaling up to $3,026.86 beginning June 4, 1946.

On February 7, 1948, the District Court of the United States for the Eastern District of North Carolina, Wilson Division, *in bankruptcy,* entered an order reciting that Council was adjudicated a bankrupt in that court on December 13, 1947; that H. S. Merrell was appointed Trustee on February 4, 1948, and authorizing him *"to take the necessary steps to avoid the attachment lien . . . in the Circuit Court of Cook County, Illinois."* In the instant case, the answer filed by the Trustee, on March 2, 1948, to the countercomplaint filed by Weber Costello Company alleges, *inter alia,* "the fact to be that said Joseph William Council was adjudicated a bankrupt on the 13th day of December, 1947, and that this defendant was duly appointed and qualified as Trustee in said bankruptcy of J. W. Council and has taken constructive possession of all of the assets of the said J. W. Council, and that the said sums due as aforesaid should be paid this defendant to be

administered in the said bankruptcy proceedings now pending in the District Court of the United States for the Eastern District of North Carolina, Wilson Division, in Cause No. 590. . . . That the said cross-complaint was not filed in this cause until the 15th day of December 1947. That the said Joseph William Council was adjudicated a bankrupt on December 13, 1947, and all assets, including the debt due him by Weber Costello Company, passed into the possession of the Trustee in Bankruptcy and jurisdiction to determine the validity or the amount of all liens against the property of the said Joseph William Council vested exclusively in the Bankruptcy Court in the District Court of the United States for the Eastern District of North Carolina, Wilson Division, in Cause No. 590. That neither this trustee nor the said Bankruptcy Court have given permission to file this counterclaim or to adjudicate this claim outside of the said Bankruptcy Court. That this Court does not have jurisdiction of the person of Joseph William Council for the reason that he was served herein by publication; that it does not have jurisdiction of the subject matter of this cause for the reason that jurisdiction thereof has passed to the Bankruptcy Court. Therefore, this defendant asks that this cause be dismissed with plaintiff's costs.''

In the determination of this appeal we have been aided by the following statements made by the Bank in its brief:

''*It is an established general rule in bankruptcy law that after an adjudication in bankruptcy, the Bankruptcy court has exclusive jurisdiction to determine all questions involving the bankrupt's property including the right to determine the extent and character of liens against the bankrupt's property. It has also been said that the filing of a bankruptcy petition is a caveat to all the world and in effect an attachment and injunction.*

589

But—these rules and doctrines are subject to certain qualifications and limitations and must be taken with reference to the facts in each particular case.

"...

"Congress recognized the need for *additional* process and procedure and provided that the Bankruptcy court shall have the right to ancillary proceedings through its trustee. After adjudication the trustee appointed in one district, may go into another and institute any action necessary to protect or recover the property of the bankrupt estate there. It is established law that any district court in bankruptcy, in the exercise of ancillary jurisdiction in aid of another Bankruptcy court, may grant injunctions, stay proceedings, etc. In other words, bankruptcy proceedings do not *ipso facto,* merely by virtue of their filing and maintenance, terminate an action already pending in a foreign State court, to which the bankrupt is a party or deprive the court of jurisdiction in such case.

"The Bankruptcy Statute also empowers the Bankruptcy court to permit its trustee to intervene in foreign State court proceedings to protect the bankrupt's estate and under such circumstances the trustee becomes bound by the decision in the State court case. For such purposes it matters not whether the State court case was filed before or after the trustee was appointed.

"...

"The Trustee in Bankruptcy had the right to file ancillary proceedings in the United States District Court for the Northern District of Illinois—without coming into the State court case, or, had the right upon entering into the State court case, to seek removal to our local Federal District Court. He did neither although he had ample opportunity so to do as appears from the various proceedings that took place in the State court.

"Instead, the Trustee in pursuance of permission granted by the court of his appointment in North Carolina, appeared voluntarily in the State court and upon leave of court filed his appearance and answer. The Trustee's answer to the counterclaim placed in issue the validity of the Assignment of Commissions held by the Bank, claiming that said assignment had been paid in full and that the Trustee was entitled to recover the entire amount of money held by Weber Costello Co.; further, that because of the bankruptcy of said Council, all assets including the moneys held by Weber Costello Co., allegedly passed into the constructive possession of the Trustee and that the Federal District Court of North Carolina had exclusive jurisdiction.

"Consequently the State court rightfully heard the case on its merits and adjudicated the claims of the parties." (Italics ours.)

The Bank further states in its brief: "There isn't any dispute about the fact that the Attachment Writ was voidable upon the election of the Trustee in Bankruptcy. . . . No evidence was offered by the Bank on the attachment issue," and it was stipulated that the writ of attachment be quashed, and the trial court quashed the writ upon motion of the Trustee. The Bank contends that "a Trustee in Bankruptcy who intervenes in a foreign State court proceeding upon leave of the court of his appointment and participates in the merits of the case, is bound by the judgment of the State court"; that "the trial court in this case had a clear right to proceed as no proper legal action had been taken to oust it from its jurisdiction," and that "the Bankruptcy court at North Carolina authorized the Trustee to intervene in the Circuit Court of Cook County; he did intervene, stayed in the case, litigated the validity of the assignment and now complains because the trial court held against his contentions."

591

The Trustee states:

"The law is perfectly clear, as appellee [the Bank] points out in the first paragraph of its argument, that bankruptcy courts, after adjudication, have exclusive jurisdiction to determine questions involving the bankrupt's property. Appellee suggests that if a bankruptcy court is to make its authority felt outside of its territorial jurisdiction it must have the cause in question transferred to the Federal Court having jurisdiction or resort to ancillary proceedings in the local bankruptcy court. Either of these means would be effective, *but there is a third alternative. That is to go into the state court, plead the adjudication, and ask the state court to direct that the funds be paid to its trustee to be returned to the jurisdiction of bankruptcy court.*

". . . There is no question of the right of the trustee to possession of the bankrupt's property wherever it is. However, if it is outside the territorial jurisdiction of the court appointing the trustee, then the trustee must go into a local court to enforce his rights. That does not abridge the rights of the trustee given him by the bankruptcy statutes, but merely makes him take a further step to enforce them. In the case on appeal the trial court refused to recognize these rights and undertook to adjudicate a portion of the bankrupt's estate."

It is true, as the Bank contends, that the Trustee, in his answer, saw fit to question the validity of the Bank's claim against the estate of the bankrupt, nevertheless, the answer of the Trustee challenged the jurisdiction of the Circuit court of the subject matter for the reason that the jurisdiction of the subject matter had passed to the Bankruptcy court. On March 4, 1948, the trial court overruled the motion of the Trustee to dismiss the countercomplaint for want of jurisdiction upon the ground that the court attained juris-

diction of the funds by virtue of the attachment and that although the trial court voided the attachment the court still had jurisdiction of the funds and the Bankruptcy court could not oust the trial court from that jurisdiction. The trial court after overruling the motion of the Trustee to dismiss the countercomplaint set the case for hearing. In the final order the trial court sustained the Trustee's motion to quash the attachment writ because it was issued within four months of the adjudication in bankruptcy, at which time the principal debtor was insolvent.

It is conceded by the Bank that the attachment writ was voidable upon the election of the Trustee and that the trial court was justified in quashing the writ of attachment upon the motion of the Trustee. It is further conceded by the Bank that it *"made no proof on the attachment issue but the case was heard solely on the counterclaim and the rights of the parties to the funds in the hands of Weber Costello Co."* In the attachment proceedings the Bank based its claim on certain notes of the bankrupt aggregating $7,388.24, but in its answer to the countercomplaint, filed nearly two weeks after the adjudication in bankruptcy, it abandoned the claim made in the attachment proceedings and based its claim upon the alleged assignments made to it by Council of moneys due him from Weber Costello Company.

 That the bankruptcy court has *exclusive* jurisdiction to control the administration of a bankrupt's estate is settled law.

In *U. S. Fidelity Co. v. Bray*, 225 U. S. 205, the court states (pp. 217, 218):

"We think it is a necessary conclusion from these and other provisions of the act [Bankruptcy Act] that the jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy' is intended to be exclusive of all other courts, and that such proceedings include,

among others, all matters of administration, *such as the allowance, rejection and reconsideration of claims, the reduction of the estates to money and its distribution, the determination of the preferences and priorities to be accorded to claims presented for allowance* and payment in regular course, and the supervision and control of the trustees and others who are employed to assist them.

". . .

"*Of the fact that the suit was begun in the Circuit Court with the express leave of the court of bankruptcy it suffices to say that the latter was not at liberty to surrender its exclusive control over matters of administration or to confide them to another tribunal.*" (Italics ours.)

In *Isaacs v. Hobbs Tie & T. Co.,* 282 U. S. 734, 739, the court cites with approval the rule stated in the *Bray* case. Other cases to the same effect need not be cited, as the Bank admits the rule. The *Isaacs* case further holds that a trustee in bankruptcy can recover the bankrupt's property or enforce his rights wherever they are, *and can turn to local courts for help in enforcing these rights; that "upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession,* and is placed in the custody of the bankruptcy court. *Mueller v. Nugent,* 184 U. S. 1, 14. The title and right to possession of all property owned and possessed by the bankrupt vests in the trustee as of the date of the filing of the petition in bankruptcy, no matter whether situated within or without the district in which the court sits." (p. 737) In the *Isaacs* case it appeared that one Cunningham was adjudged bankrupt in the Northern District of Texas and Isaacs was made trustee of the bankrupt's estate. Thereafter the holder of a note secured by a mortgage on certain land instituted foreclosure proceedings in a State court of Arkansas. Then the bank-

rupt and the trustee specially appeared and petitioned for removal of the cause to the United States District Court for the Western District of Arkansas. To quote from the decision (p. 739):

". . . The appellant-trustee might have instituted ancillary proceedings in the District Court for the Western District of Arkansas and there obtained an injunction to restrain the appellee from foreclosing its mortgage. There is no reason, however, why he should not have followed the course here pursued, of pleading the adjudication in Texas in abatement of the foreclosure proceeding. The state court in which the foreclosure action was begun was without jurisdiction to pursue it. *Upon removal into the federal court upon the ground of diversity of citizenship, the latter court had no higher or different right to interfere with the bankruptcy administration than had the state court.* The answer of the trustee stated a valid defense and it was error to enter judgment against him on the pleadings.

"*Appellee asserts that inasmuch as the appellant removed the cause into the federal court he waived any lack of jurisdiction in that court and estopped himself to set up exclusive jurisdiction of the bankruptcy court. There is no merit in this contention. The jurisdiction in bankruptcy is made exclusive in the interest of the due administration of the estate and the preservation of the rights of both secured and unsecured creditors. This fact places it beyond the power of the court's officers to oust it by surrender of property which has come into its possession. Whitney v. Wenman, 198 U. S. 539; In re Schermerhorn, 145 Fed. 341. Indeed, a court of bankruptcy itself is powerless to surrender its control of the administration of the estate. U. S. Fidelity & G. Co. v. Bray, 225 U. S. 205. The action of the trustee in removing the cause, could*

*not, therefore, divest the Texas District Court of its jurisdiction."* (Italics ours.)

As a trustee in bankruptcy could not surrender the control of the administration of the bankrupt's estate even to a Federal court, he certainly could not surrender that control to the Circuit court of Cook county. If this were not so an intolerable situation as to estates of bankrupts would prevail.

■■ The Federal District Court of North Carolina had jurisdiction to direct its Trustee to appear in the State court in Illinois to plead the adjudication in bankruptcy and to ask the State court to return to the Trustee moneys in its possession that admittedly belonged to the estate of the bankrupt. When the attachment writ was quashed the funds of the bankrupt were in the actual possession of the Circuit court, but the title to the funds, the constructive possession of the funds, were vested in the Trustee and the Trustee had the clear right to actual possession of the funds. In our judgment the trial court should have turned over the funds to the Trustee. Instead of doing so the trial court proceeded to pass upon the merits of the Bank's claim, that sought to reach funds belonging to the estate of the bankrupt, and after deciding that the claim was a just one the trial court retained a part of the estate of the bankrupt sufficient to pay the claim of the Bank against the bankrupt's estate and then entered an order that the balance of the funds in its possession be returned to the Trustee, *"to be administered by the Court of his appointment."* In our view of the law the position taken by the trial court, that it attained jurisdiction of the funds by virtue of the attachment and that although the trial court voided the attachment it still had jurisdiction of the funds and the Bankruptcy court could not oust it from that jurisdiction, cannot be defended. Indeed, the Bank, in its brief, does not rely upon the court's position. It con-

596

cedes that the Bankruptcy court had exclusive jurisdiction to determine all questions involving the bankrupt's property, including the right to determine the extent and character of liens against the bankrupt's property, and it seeks to support the judgment entered upon the ground that "the Bankruptcy court at North Carolina authorized the Trustee to intervene in the Circuit Court of Cook County; he did intervene, stayed in the case, litigated the validity of the assignment and now complains because the trial court held against his contentions." The position of the Bank is, in effect, that the North Carolina Bankruptcy court waived or surrendered its exclusive jurisdiction to determine all questions involving the bankrupt's estate in the instant case. We have shown, however, that the Bankruptcy court cannot surrender its exclusive control over matters of administration or confide them to another tribunal. That wholesome rule is based upon the Bankruptcy Act. Counsel for the Bank have cited a number of cases in support of their contention that the Trustee participated in the proceedings before the Circuit court and is, therefore, bound by the judgment of that court, but, in our judgment, the cases cited differ from the instant one upon the facts. If the Bank has a valid claim against the bankrupt estate of Council it has a right to present it to the Bankruptcy court in North Carolina.

The judgment order of the Circuit court of Cook county is reversed, and the cause is remanded with directions to the trial court to order the Clerk of the Circuit court to pay to the Trustee in Bankruptcy all funds in his hands that were deposited there by the Weber Costello Company by order of the court.

*Judgment order reversed, and cause remanded with directions.*

FRIEND, P. J., and SULLIVAN, J., concur.

(See next page)

ADDITIONAL OPINION UPON PETITION FOR REHEARING.

As appears from our opinion, the principal contention urged by the Bank in its brief in support of the judgment was that "a Trustee in Bankruptcy who intervenes in a foreign State court proceeding upon leave of the court of his appointment and participates in the merits of the case, is bound by the judgment of the State court," but as it is clear from certain cases cited in our opinion that the Bankruptcy Court was given by the Act exclusive jurisdiction to deal with the property of the bankrupt estate and that that court cannot surrender or waive that jurisdiction, the Bank abandoned, apparently, the waiver contention. In the petition for a rehearing it contends: "The bank's claim under the counterclaim was not against the bankrupt or his bankruptcy estate. It was a direct and primary claim against a third party—Weber Costello Company, who expressly undertook and agreed to pay a specified sum of money to the bank in consideration of which the bank advanced its funds to Mr. Council. The assignment was not conditional, but passed the title to the funds thereunder directly to the bank, and such funds were not a part of the bankruptcy proceedings filed eighteen months after the assignment was given. Therefore the Bankruptcy Court did not and could not have constructive possession over property that wasn't owned by the bankrupt."

"Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court. *Mueller v. Nugent,* 184 U. S. 1, 14. The title and right to possession of all property owned and possessed by the bankrupt vests in the trustee as of the date of the filing of the petition in bankruptcy, no matter whether situated within or without the district in which the court sits. *Robertson v. Howard,* 229 U.

S. 254, 259–260; *Wells v. Sharp*, 208 Fed. 393; *Galbraith v. Robson-Hilliard Grocery Co.*, 216 Fed. 842. It follows that the bankruptcy court has exclusive jurisdiction to deal with the property of the bankrupt estate. It may order a sale of real estate lying outside the district. *Robertson v. Howard, supra; In re Wilka*, 131 Fed. 1004. *When this jurisdiction has attached the court's possession cannot be affected by actions brought in other courts. White v. Schloerb*, 178 U. S. 542; *Murphy v. Hofman Co.*, 211 U. S. 562; *Dayton v. Stanard*, 241 U. S. 588. . . . *Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation. Ex parte City Bank of New Orleans*, 3 How. 292; *Houston v. City Bank of New Orleans*, 6 How. 486; *Ray v. Norseworthy*, 23 Wall. 128; *In re Wilka, supra; Nisbet v. Federal Title & T. Co.*, 229 Fed. 644.'' (*Isaacs v. Hobbs Tie & T. Co.*, 282 U. S. 734, 737, 738. Italics ours.)

██ The Bank, in its brief upon the appeal, *when it was relying upon the point of waiver,* stated: ''It is an established general rule in bankruptcy law that after an adjudication in bankruptcy, the Bankruptcy court has exclusive jurisdiction to determine all questions involving the bankrupt's property including the right to determine the extent and character of liens against the bankrupt's property. It has also been said that the filing of a bankruptcy petition is a caveat to all the world and in effect an attachment and injunction.'' In passing upon the Bank's present position we deem it advisable to restate certain salient facts: On November 3, 1947, the Bank filed a complaint in the Circuit court of Cook county against J. W. Council, the complaint alleging that Council was indebted to the Bank by virtue of a certain note dated August 18, 1947, in

the principal sum of $7,388.24, which was past due. On the same day, upon an affidavit for attachment, a writ issued to attach any estate or effects of Council, and service of the writ was had on Weber Costello Company as garnishee. The affidavit stated that Weber Costello Company "has effects or estate of said defendant [J. W. Council] in its possession, custody or charge." The answer of the garnishee stated:

"1. It holds indebtedness in the sum of $4811.28, representing commissions due J. W. Council on account of orders obtained by him and shipped to respective customers;

"2. Indebtedness in the sum of $200.25 representing commissions due J. W. Council on account of orders obtained by him and having been shipped and payment having been made therefor after the date of service;

"3. Said J. W. Council obtained certain orders for garnishee's products, shipped to various customers, but payment not made in amount of $192.40. J. W. Council obtained orders which had not been accepted. Goods not shipped and commissions when accepted and shipped total $1372.50."

It is clear from the record that "effects or estate" of J. W. Council reached by the attachment writ were deposited by Weber Costello Company with the clerk of the Circuit court by order of that court. In the "counterclaim" of Weber Costello Company filed December 15, 1947, it alleged that on the date of the service of the writ it was indebted to J. W. Council in the sum of $4,811.28, representing commissions due, and that since the service of the writ it has become indebted to Council in further amounts, and it prayed that it *may be ordered to bring the said sums of money into this court, subject to the further order of the court.*" In an order entered March 22, 1948, Weber Costello Company was ordered to pay to the clerk of the court the sums it owed J. W. Council. In the "an-

swer'' of the Bank to the ''counterclaim of Weber
Costello Company it admitted that said Company was
indebted to J. W. Council as set forth in its ''counter-
claim.'' On December 12, 1947, which date was within
four months of the service of the attachment writ,
Council filed his petition in bankruptcy and was ad-
judicated a bankrupt on December 13, 1947. On Decem-
ber 26, 1947, *thirteen days after the adjudication in
bankruptcy,* the Bank filed an ''answer'' to the ''coun-
terclaim,'' and as it was then certain that the attach-
ment writ would be quashed upon motion of the
Trustee, the Bank in its ''answer'' abandoned its claim
against Council and asserted a claim against Weber
Costello Company *based upon assignments of commis-
sions executed by Council and accepted by that Com-
pany,* which agreed to pay the Bank the amounts of the
assignments, and the new suit asserted that the assign-
ment is in full force, that *Weber Costello Company is
indebted to the Bank in the sum of $3,026.86,* and the
Bank *prays for judgment against Weber Costello Com-
pany* and ''that Court order all of assignment paid in
the amount of $3026.86.'' The Bank contends, and the
Trustee asserts, that the ''answer'' of the Bank was
the commencement of an entirely new suit. It follows,
of course, that the Circuit court of Cook county could
not even claim that it acquired jurisdiction of the sub-
ject matter of the new suit until the ''answer'' of the
Bank was filed. It was stipulated that the attachment
writ in the case of the Bank against Council was voida-
ble and the trial court was obliged to quash it upon the
motion of the Trustee. In the final judgment order the
trial court entered a judgment in favor of the Bank and
ordered the clerk of the court to pay to the Bank
$3,026.86 and costs *out of the funds that had been de-
posited with the clerk by Weber Costello Company by
the following order of the court:* ''. . . that Weber
Costello Company pay to the Clerk of the Circuit

Court, $5178.68 [the amount Weber Costello Company stated in its 'counterclaim' that it was indebted to Council] subject to the order of this court." The amount so deposited was the amount reached by the attachment writ. The trial court recognized that the funds that he ordered Weber Costello Company to deposit with the clerk were funds belonging to the bankrupt, and in the judgment order also ordered "that the Trustee in Bankruptcy is entitled to receive all funds in the possession of Weber Costello Company in excess of the sum of $3026.86 *to be administered by the Court of his appointment.*" Indeed, the trial court in deciding the case recognized that the funds in the possession of the clerk of the court were assets or effects of the bankrupt and stated that although he quashed the attachment writ the court still had possession of the funds and the Bankruptcy Court could not oust the trial court of that jurisdiction. Until the attachment writ was quashed all parties recognized that the funds deposited with the clerk of the court were assets or effects of J. W. Council.

It must be noted that the judgment order in the instant case was entered March 23, 1948, three months and ten days after the adjudication in bankruptcy. The answer of the Trustee in Bankruptcy, filed March 2, 1948, alleged that jurisdiction to determine the validity of all liens against the property of Council was exclusively in the Bankruptcy Court in North Carolina. Despite the arguments of the able attorneys for the Bank it clearly appears from the record that the trial court passed upon the validity of the alleged lien of the Bank against the funds deposited with the clerk of the court, held that it was a valid lien, and ordered the claim of the Bank paid out of the said funds. It is our considered judgment that under the record in this case and the law only the Bankruptcy Court could pass upon the validity or invalidity of the alleged lien first as-

serted by the Bank in its "answer" to the "counter-claim."

We find no good reason why the petition for a re-hearing should be allowed, and it is accordingly denied.

*Petition for rehearing denied.*