## T. E. WELLS & CO. v. SHARP.

### In re PLYMOUTH ELEVATOR CO.

(Circuit Court of Appeals, Eighth Circuit.   October 1, 1913.)

### No. 3,717.

1. BANKRUPTCY (§ 210*)—BANKRUPTCY COURT—JURISDICTION—CONSENT.

   In bankruptcy proceedings, the trustee obtained an order requiring a chattel mortgagee of certain property of the bankrupt to surrender the same, and enjoining the mortgagee from proceeding to foreclose its mortgage. Thereafter the bankruptcy court ordered the property sold and the lien of the mortgagee, if any, transferred from the property to the proceeds of sale. The mortgagee, without appeal, delivered the possession of the property to the trustee, who sold the same and delivered the property to the purchaser, after which the trustee filed a petition attacking the validity of the mortgage, and prayed for an order to show cause why the lien should not be adjudged void. *Held* that, though the validity of the mortgage was originally a question which could be determined only in a plenary action between the trustee and the mortgagee, the latter, having consented by failure to object to the proceedings taken, waived its right to object to the determination of the validity of its lien by the bankruptcy court.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323; Dec. Dig. § 210.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 260*)—ADMINISTRATION OF ESTATE—LOCATION OF PROPERTY—EXTRATERRITORIAL JURISDICTION.

That a bankrupt's estate was being administered in a bankruptcy court of South Dakota did not deprive it of jurisdiction to sell property belonging to the estate located in Iowa.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 360; Dec. Dig. § 260.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

3. CORPORATIONS (§ 415*) — CHIEF EXECUTIVE OFFICER — POWERS — CHATTEL MORTGAGE.

The chief executive officer of a business corporation, though empowered to transact its usual and current business in the ordinary course, has no implied power to execute a chattel mortgage on a portion of the corporation's assets.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669; Dec. Dig. § 415.*]

4. CORPORATIONS (§ 477*) — CHATTEL MORTGAGES — EXECUTION — WHAT LAW GOVERNS.

The validity of a corporation's mortgage of personal property executed in South Dakota, which is the corporation's domicile, is governed by the laws of that state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1857–1863, 1865–1869; Dec. Dig. § 477.*]

5. CORPORATIONS (§ 415*)—CHATTEL MORTGAGE—EXECUTION—VALIDITY.

Civ. Code S. D. § 434, provides that the business of corporations shall be conducted by a board of not less than 3 nor more than 11 directors. A corporation's articles provided that the number of its directors should be four, and the by-laws declared that the board should have the management of its affairs and business, and that a majority of them should constitute a quorum for the transaction of business. Held that, where the president of the corporation, without authority from the board, attempted to execute a chattel mortgage on certain of its assets, and acknowledged the same as "his voluntary act and deed" as distinguished from the act and deed of the corporation, it was void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669; Dec. Dig. § 415.*]

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

In the matter of bankruptcy proceedings of the Plymouth Elevator Company. From an order (191 Fed. 633), affirming the decision of a referee holding invalid a chattel mortgage executed by the bankrupt in favor of T. E. Wells & Co., it appeals. Affirmed.

See, also, 208 Fed. 399.

Edwin R. Winans, of Sioux Falls, S. D. (Edward Sonnenschein, of Chicago, Ill., on the brief), for appellant.

J. W. Boyce, of Sioux Falls, S. D. (R. H. Warren and A. B. Fairbank, of Sioux Falls, S. D., on the brief), for appellee.

Before ADAMS and SMITH, Circuit Judges, and WILLARD, District Judge.

ADAMS, Circuit Judge. This is an appeal from a judgment of the District Court for the District of South Dakota, affirming an order of

the referee in bankruptcy awarding the proceeds of sale of two certain movable elevators located along a railroad in the state of Iowa to the trustee in bankruptcy of the Plymouth Elevator Company, for distribution among the general creditors, and not to T. E. Wells & Co., the appellant.

The facts as disclosed by the proof are these: Some time before the elevator company was adjudicated a bankrupt its president executed a chattel mortgage purporting to convey the elevators in question to Wells & Co., to secure the payment of a past-due indebtedness. Later Wells & Co., pursuant to a provision of the mortgage in that regard, took possession of the property mortgaged, for the purpose of foreclosing its lien. Afterwards, on petition of the trustee, disclosing among other things that the property was worth more than the debt secured, the referee made an order upon Wells & Co. to show cause on a day fixed why it should not be enjoined from proceeding with the foreclosure. Wells & Co. appeared in opposition to the order to show cause, and after a hearing the referee made the order prayed for.

Later the trustee made a report to the referee that the mortgaged property, by reason of its peculiar location and brief annual usefulness, ought to be speedily disposed of, advised the referee that he had received an offer of $5,500 for a clear and unincumbered title to the property, and recommended its acceptance. An order was made upon Wells & Co. to show cause why the property should not be sold, as recommended by the trustee. After a full hearing, the referee ordered the trustee to accept the offer as made, and that the lien of Wells & Co., if any, be transferred from the elevators themselves to the proceeds of the sale. Wells & Co. was thereupon ordered to forthwith deliver possession of the elevators to the trustee for delivery by him to the purchaser upon the payment of the purchase price. Wells & Co. took no appeal from this order, but obeyed it and delivered the elevators to the trustee as directed.

Afterwards the trustee filed a petition before the referee, setting forth the facts hereinbefore stated, and that Wells & Co. claimed to have had a valid mortgage or lien upon the elevators, and, by virtue of the orders already referred to, now claim such a lien upon the proceeds of their sale. The trustee further set forth that the alleged chattel mortgage was void, among other reasons, because the president, who alone executed it, had no authority to do so, and prayed for an order against Wells & Co. to show cause why the lien claimed by it should not be adjudged void, and why the proceeds of the sale of the elevators should not be distributed like other assets among the general creditors. This order having been made and duly served, Wells & Co. specially appeared, and made a return to the effect that the court was without jurisdiction to determine its rights to the fund in question, and, in the language of the return, "that the said subject-matter can only be considered and the relief sought granted, if at all, in a plenary action instituted in a court of competent jurisdiction." The referee overruled this plea and proceeded to hear and determine the question whether the mortgage was void or not, and finally adjudged it

to be void, and that the proceeds of the sale of the elevators belonged to the trustee for distribution to general creditors.

This order of the referee was afterwards in all things affirmed by the District Court, and the present appeal presents the two questions: Whether the referee and the court below had jurisdiction to hear the controversy between Wells & Co. and the trustee summarily; and, second, whether they rightly adjudged the mortgage void, and for that reason awarded the proceeds of the sale of the elevators to the trustee instead of to Wells & Co.

The question whether the mortgage was void or not if seasonably raised would, without doubt, have presented a controversy at law or in equity, and for that reason could not, in the absence of other facts disclosed by the record, have been determined in a summary proceeding in the bankruptcy case. It necessarily would have been the subject-matter of some plenary action between the trustee and plaintiff.

[1] But do not the facts alter the situation? We think they do. Three times at least Wells & Co. submitted without appeal to the exercise of jurisdiction by the court of bankruptcy; once when the court enjoined it from proceeding with its foreclosure; again when the court ordered the elevators to be sold and the lien of Wells & Co., if any, transferred from the property itself to the proceeds of sale, and again when in obedience to the order of court it delivered possession of the elevators to the trustee to be by him delivered to the purchaser

From none of these orders did Wells & Co. appeal or seek review by any superior tribunal. It acquiesced in them all, and never questioned the jurisdiction of the court in bankruptcy to make any of them. (Counsel for appellants in their brief state that they objected to the procedure to enjoin appellant from foreclosing its mortgage, on the ground that the court was without jurisdiction to proceed in a summary way; but the record does not sustain their contention. It shows merely that they appeared *specially*, not to protest against the exercise of jurisdiction, but "for the purpose of setting aside the service of the order to show cause and in opposition thereto.") In other words, they allowed the court of bankruptcy to take possession of the mortgaged property and convert the same into money, provided only it would preserve Wells & Co.'s rights, whatever they were, against the money in place of the property itself. Not until this money was in custodia legis and in the process of administration did Wells & Co. question the jurisdiction of the court of bankruptcy in the premises.

We think the failure to appeal from the several orders of the bankruptcy court already referred to, and the surrender of the possession of the mortgaged property to the trustee for sale by him under the terms and conditions specified, amounted to a voluntary submission by Wells & Co. of its present contention to the court of bankruptcy for adjudication as a proceeding in bankruptcy. It voluntarily permitted that court to take custody of the property on which it claimed a lien, and to reduce it to money for the benefit of the true owner, whoever it might be. It results that the money was in the lawful custody of the bankruptcy court for disposition. After that it was clearly competent for the court to proceed in the usual course of administration as a pro-

ceeding in bankruptcy, even in a summary way, to determine the rights of the claimants to that fund. In re Bacon, 159 Fed. 424, 86 C. C. A. 404; In re Rochford and Joe Kirby, 124 Fed. 182, 59 C. C. A. 388; Chauncey v. Dyke Bros. et al., 119 Fed. 1, 55 C. C. A. 579.

[2] The suggestion is made that because the elevators in question were located in the state of Iowa and outside the territorial jurisdiction of the District Court of South Dakota, that court could exercise no jurisdiction over them; but this is without any merit. United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 217, 32 Sup. Ct. 620, 56 L. Ed. 1055; Robertson et al. v. Howard et al., 229 U. S. 254, 33 Sup. Ct. 854, 57 L. Ed. 1174, decided by the Supreme Court June 10, 1913.

The next question is whether the mortgage created a valid lien in favor of Wells & Co. The statutes of South Dakota provide that the business of its corporations should be conducted by a board of not less than 3 nor more than 11 directors. Section 434, Revised Civil Code, S. D. The articles of association of the Plymouth Elevator Company provided that the number of its directors should be four, and its by-laws provided that the board of directors should have the management of its affairs and business, and that a majority of them should constitute a quorum for the transaction of business. On June 21, 1909, the board consisted of four members, namely, J. G. Walter, F. P. Walter, Ed. L. Wendt, and J. W. Cook. J. G. Walter was the president and Mr. Wendt was the secretary of the corporation. On that day the president executed a chattel mortgage purporting to convey the two movable elevators in question to Wells & Co. to secure a past-due indebtedness. He signed the mortgage thus: "The Plymouth Elevator Company, by J. G. Walter, President." The seal of the corporation was affixed to the mortgage by the president. Neither the board of directors nor the individual members of the board, or any of them, authorized or knew anything about the execution of the mortgage by the president. The mortgage was acknowledged by Mr. Walter as *his voluntary act and deed*" and not as the act and deed *of the corporation.*

[3] Was the mortgage, so executed, a lawful and valid conveyance of the property sought to be conveyed to Wells & Co.? According to the obvious meaning of the statute of the state, the articles of association, and the by-laws of the corporation, the mortgage should have been authorized by the board of directors or by at least a majority of its members. But the argument is made that because Walter was the president and active manager of the business of the corporation he was ipso facto empowered to execute the mortgage in question. Without doubt his general authority as chief executive officer and active manager of the business of the corporation empowered him to transact the usual and ordinary current business in the usual and ordinary course, such as contracting for the purchase or sale of grain or coal in which the corporation was authorized to deal, and to perform other like acts necessary and incidental to the conduct of the business, but we are of opinion that this implied authority did not comprehend the power to dispose of the building or machinery or appliances which the corporation had acquired and was then using for the transaction of its

business. The mortgaging of property to secure a past-due indebtedness is certainly not an act done in the usual course of current business. It is a first step to what generally terminates in bankruptcy and destruction of the business. We cannot give our assent to the exercise of such potentially destructive power by a chief executive officer of a business corporation without authority of the board of directors or stockholders themselves. The leading case on this subject in South Dakota, Des Moines M. & S. Co. v. Tilford M. Co. et al., 9 S. D. 542, 70 N. W. 839, puts a construction upon the statutes of that state above referred to quite inconsistent with the contentions of counsel for appellant, and in entire harmony with the conclusions we have reached.

Appellant's counsel call attention to section 2 of article 2 of the Session Laws of South Dakota for the year 1907 in force at the time the mortgage was given, which reads:

"The corporate seal of any corporation attached to a deed, mortgage * * * executed and acknowledged by any officer of such corporation, shall be prima facie evidence that such officer was duly authorized to execute such instrument on behalf of such corporation"

—and earnestly argue that the presumption of authority arising from the presence of the seal on the mortgage was not overcome by the proof. We cannot agree to this. We think the proof taken as a whole establishes, without any reasonable doubt, that none of his associate directors either authorized or had any knowledge whatever of the execution of the mortgage by the president.

[4] Section 1 of this same article 2 enacts:

"That any officer of a corporation, authorized by the charter or articles of incorporation, the by-laws, or the consent of the stockholders or of the board of directors of such corporation, may execute deeds, mortgages, * * * and acknowledge the same on behalf of such corporation."

[5] In view of the fact that this is a mortgage of *personal property* (so conceded by counsel on both sides), and that it was executed in South Dakota, the home or domicile of the corporation, it is conceived that the law of South Dakota with relation to the execution of the instrument should prevail. Mr. Walter in acknowledging the execution of the chattel mortgage before the notary public did not pretend to have acted for and on behalf of the corporation. He acknowledged the execution of the mortgage *"as his voluntary act and deed."* Whether this fact would in itself have vitiated the mortgage as a corporate act need not now be determined, but the fact that he did not represent himself to have acted for and on behalf of the corporation affords an interesting confirmation of the conclusion already reached by us that he (certainly in his own opinion) had never been authorized to act for it in the making of the mortgage.

Attention is called by appellant's counsel to the case of American Nat. Bank v. Wheeler-Adams Auto Co. (S. D.) 141 N. W. 396, and they claim it is a parallel case to the one under discussion, and, being a construction of a local law by the highest judicial tribunal of South Dakota, must govern us in the determination of the present case. But is the case parallel? That was a suit to foreclose a chattel mortgage given by a corporation, and the vital question was, as in this case,

whether the mortgage was lawfully executed by the corporation. The board of directors was composed of three members, consisting of the president and secretary and the wife of the president. Two of them, the president and secretary, who had the general control of the business of the corporation, joined in the execution of the mortgage, but the wife knew nothing about it. It appeared in that case that the directors had no regular meetings, but had permitted two of its members, the president and secretary (a majority of the board) to assume and exercise entire control and management of the business of the corporation. This is referred to in the opinion as an abandonment by the directors "of their functions and duties as directors," and for that reason, among others, it was held that the corporation, its directors and stockholders were estopped from questioning the validity of the mortgage. Without assenting to these propositions we content ourselves with a statement of the differences between that case and this. In this case, instead of there being a joint participation in the execution of the mortgage by a majority of the board of directors, as in that case, the president alone acted for the corporation; the secretary neither signed the mortgage, nor attached the seal, and no other one of the four directors knew anything about its execution. In this case also, while there were no regular meetings of the board of directors, the other directors were frequently in consultation with the president in relation to the affairs of the corporation, and hence there was no abandonment of their functions as in that case. In view of these differences the case cited is not only not controlling of this, but in our opinion is of very little, if any, persuasive force.

We discover no error in the conclusion reached by the referee and District Court in the case, and the decree must be affirmed.