### MARYLAND FINANCE CORPORATION v. DUVALL.

#### In re NATIONAL CONSUMERS' EXCHANGE, Inc.

(Circuit Court of Appeals, Fourth Circuit. November 24, 1922.)

No. 1999.

1. **Corporations ⬅415—Chattel mortgage executed by president held void.**

   A chattel mortgage executed by the president of a hopelessly insolvent corporation, without authority of the directors, the proceeds of which, after deducting a discount of 70 per cent. per annum, were used or dissipated largely in the payment of obligations for which the president was personally liable, *held* invalid.

2. **Corporations ⬅415—President cannot incumber company's property without authority.**

   Whenever a president of a company seeks by his own acts, and without lawful authority from the company, to incumber and give a lien upon the company's property, his acts are illegal and void.

3. **Bankruptcy ⬅185—Trustee of bankrupt corporation not estopped to deny validity of unauthorized corporation mortgage.**

   Trustee of bankrupt corporation *held* not estopped to deny the validity of a chattel mortgage of the corporation's property, executed by its president without authority from directors or stockholders.

4. **Bankruptcy ⬅185—Restoration of money advanced to insolvent corporation on president's unauthorized chattel mortgage held not required.**

   It was not error for the bankruptcy court to allow contest of a mortgage of bankrupt corporation, without first restoring the money advanced thereon, where the mortgage was executed by its president, without authority from directors or stockholders, when the corporation was hopelessly insolvent, and the proceeds, after deducting a usurious discount, were so manipulated as to inure to the benefit of the president instead of to that of the company, and the mortgagee was put on inquiry.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Bankruptcy ⬙185—Corporations ⬙432(4)—Seal on mortgage held to raise presumption of president's authority to execute it, but not to prevent bankruptcy trustee of corporation from showing mortgage's invalidity.**

The presence of a corporation's seal on its chattel mortgage executed by its president raised merely a presumption of authority to execute it, and therefore did not prevent the corporation's trustee in bankruptcy from showing the actual circumstances of its execution, which was unauthorized and unknown to stockholders and directors.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore, in Bankruptcy; John C. Rose, Judge.

Petition by the Maryland Finance Corporation against Raymond M. Duvall, trustee in bankruptcy of National Consumers' Exchange, Incorporated. From an adverse order (280 Fed. 449), petitioner appeals. Affirmed.

Arthur W. Machen, Jr., of Baltimore, Md. (William Stanley and Hershey, Machen, Donaldson & Williams, all of Baltimore, Md., on the brief), for appellant.

J. Wallace Bryan, of Baltimore, Md., for appellee.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WADDILL, Circuit Judge. This is an appeal from an order of the United States District Court for the District of Maryland, at Baltimore, entered on the 30th day of March, 1922, in the bankruptcy proceedings of the National Consumers Exchange, Incorporated, whereby the court denied to the appellant herein, the petitioner in said bankruptcy proceedings, the right asserted in said petition to a preferred lien upon the assets of the bankrupt's estate, because of the invalidity of the mortgage creating such lien, and dismissed the petition. The following is a succinct and brief summary of the facts stated in the opinion of the district judge (280 Fed. 449):

"Early in January, 1920, the bankrupt obtained a Delaware charter, by which its authorized capital was fixed at $200,000. In October of the same year those who ran it went through the form of amending its certificate of incorporation, so that its permissible capital was raised to $5,000,000. Although it was incorporated in Delaware, and did business in Baltimore City, and apparently nowhere else, its few corporate meetings were held in Springfield, Mass., presumably because that had been the former home of one Hale. who was its promoter and its president. Such capital as it actually had came from the contributions of literally hundreds of stockholders, who were secured as the result of a door to door canvas in certain sections of the city [Baltimore]. It is possible that as much as $70,000 in the aggregate may have been obtained from them. When in March, 1921, it was put into the hands of state court receivers, all this had disappeared, and it owed to unsecured creditors upwards of $20,000.

"Almost all of its fixtures had been bought under conditional sales contracts, upon which so little had been paid that there was practically no valuable equity in them.

"In January, 1921, Hale, its president, had application made to the Maryland Finance Corporation, hereinafter called the petitioner, for a loan of $5,000, to be secured by a mortgage on all its property, except provisions, situate in the several stores in the city of Baltimore. The petitioner was told that some of the property was covered by conditional sales contracts and bills of sale,

and that the greater portion of the loan would be applied to their payment. It was also told that the loan would be repaid out of the receipts of the subscription to the bankrupt's capital stock and from the income of its several stores. As the result, on the 1st day of February, Hale, in the name of the bankrupt, executed a chattel mortgage to the petitioner for $5,000, to secure a note for that amount, payable three months after date. The amount actually advanced was only $4,250, and Hale, for the bankrupt, therefor promised to pay $750 for the loan of $4,250 for three months, or at the rate of slightly over 70 per cent. per annum.

"This mortgage was signed 'National Consumers' Exchange, Inc., by D. Everett Hale, President.' The bankrupt's corporate seal was also attached, attested by its assistant treasurer. The mortgage was never authorized at any meeting of the board of directors, and it does not appear that any director, other than Hale, ever knew anything about it."

Appellant makes seven assignments of error to the rulings of the court. The first, second, sixth, and seventh relate to the action of the District Court (a) in dismissing the petition of appellant, and its failure to allow the asserted claim as a secured debt; (b) in holding invalid the mortgage attempting to secure the same; (c) for failing and refusing to hold the mortgage to be a valid and effectual security for the payment of the appellant's debt; (d) for its failure to decree in favor of the appellant in accordance with the prayer of its petition. Assignment 3 is for failure to hold the mortgage in question valid, because the same had been ratified by the bankrupt and its trustee; assignment 4, because the court erred in failing and refusing to hold the bankrupt's trustee estopped from denying the validity of the mortgage; and assignment 5, for error of the court in holding that said mortgage might be avoided and rescinded, without the trustee first restoring to the appellant the money advanced upon faith of the mortgage. These assignments will be considered in the order named, treating the first, second, sixth, and seventh as a single assignment, as they relate substantially to the same subject, that is, to the court's action in holding that the mortgage was invalid; that the debt therein secured was not a preferred claim, but on the contrary was ineffective and invalid, in so far as it sought to give the appellant a secured claim, and hence a denial of the prayer of the petition in that respect.

[1] First. The mortgage involved admittedly was executed without any authority from the directors or stockholders of the company, by the president of the bankrupt corporation, who signed the corporation's name as president; the corporate seal being attached by the assistant treasurer of the company. The mortgage upon its face did not purport to have been executed pursuant to any lawful authority or direction of the corporation, acting either through its board of directors or stockholders, but was the sole act of the president, in concert with the assistant treasurer of the corporation. It was made at a time when the corporation was hopelessly insolvent, and in effect embraced all of the assets of the corporation, including its office furniture, except provisions in several stores of the company, and certain property fully covered by vendor's liens. The money raised upon this mortgage was used or dissipated largely in the payment of obligations for which the president was personally liable, and which at the time were not known to be obligations of the company.

In these circumstances, we think the District Court correctly held that the president of the corporation had no power to mortgage the company's assets without previous authority from the board of directors.

The fact that the president of a corporation cannot execute a valid mortgage under conditions such as here is well settled. There is no claim in this case that the mortgage was authorized by the stockholders, or board of directors, at any meeting called for the purpose, or that such directors or stockholders had actual knowledge of the making of the same, or that they either directly or indirectly, collectively or as individuals, participated in the making of the mortgage, or had any knowledge of the execution thereof; and have never ratified the same since it came to their knowledge. The so-called mortgage was the outcome of an effort on the part of the president of the corporation, acting through and by a clerk of the company, to raise money by giving a preferred lien upon the company's assets, which was accomplished, though $750 was paid for the use of $4,250 for a period of three months, that is, more than 70 per cent. per annum for the period.

[2] The doctrine of the limitation of the power of the president of a corporation to incumber its assets is of almost universal recognition.

"He has no implied authority, simply by virtue of his office as president, to make any contract for the corporation * * * or to convey the property of the company, or to sell or sign the corporation's notes, bonds, or other assets, or to mortgage any of the corporate property, or surrender or transfer the corporate franchises." Purdy's Beach on Private Corporations, vol. 2, § 793.

"An officer or agent of a corporation, in order to bind the corporation by a mortgage or pledge of its personal property, must have express or apparent authority to do so, and this power is not inherent in the office of the president, or of the secretary. * * *" 7 R. C. L. 645.

"The president, or the president and secretary, have no power, merely by virtue of their offices, to execute a mortgage or pledge of the property of the corporation, even though he or they own all or most of the stock, and this rule is particularly applicable where the power to manage and conduct corporate affairs is expressly vested in the board of directors." 14-A Corpus Juris, 465.

"As a general rule a person dealing with a corporation is bound to know whether or not the person who assumes to represent it and to act in its name is authorized to do so, and the nature and extent of his authority; he must take notice that such authority is derived from statutes, by-laws or usages which more or less define its extent, and is chargeable with notice of limitations and restrictions imposed by statute or by the charter or constitution of the corporation." 14-A Corpus Juris, p. 351, § 2213.

In the instant case, had appellant exercised casual precaution to inform itself of the extent of the authority of the president of the appellee company, from the company's charter and by-laws (of which it should have been warned by the failure of the mortgage by appropriate recital, to show authority for its making and execution), it would have discovered not only the absence of actual or implied authority to make and execute the same, but that authority to mortgage the company's property was expressly vested in the board of directors, and the president was limited to signing "all contracts, orders, deeds, agreements, licenses and other instruments of a special nature," only when duly authorized by the board of directors. Moreover, an examination of the

company's records, whether of its stockholders or directors, would have shown that no other mortgage or similar lien had ever been theretofore authorized by the company, nor its president granted unusual powers and authority in respect to the execution of such instruments, as might have misled the innocent in dealing with the company. In some instances, the president of a company may have been so exclusively intrusted with the administration of the company's affairs, and so held out to the public, in a similar matter, or he may have been so largely the owner of the company's stock, that a particular transaction or lien may have been held valid against and binding upon the corporation, though not expressly authorized by it, that is, in the circumstances it would be inequitable and unjust to allow the company to repudiate his acts, or the same to be avoided by others. But none of these conditions exist here, either as to the exclusive control and management of the company, the execution of similar papers, or the giving of like liens, or the ownership of the company. Whenever a president of a company seeks by his own acts, and without lawful authority from the company, to incumber and give a lien upon the company's property, his acts are illegal and void. The authorities, state and federal, including those of this circuit, fully sustain this position. Potts v. Wallace, 146 U. S. 689, 705, 706, 13 Sup. Ct. 196, 36 L. Ed. 1135; De La Vergne Co. v. German Savings Inst. 175 U. S. 40, 43, 44, 20 Sup. Ct. 20, 44 L. Ed. 65, and cases cited; In re St. Helen Mill Co., Fed. Cas. No. 12,222; Dooley v. Pease (C. C.) 79 Fed. 860; T. E. Wells & Co. v. Sharp, 208 Fed. 393, 125 C. C. A. 609 (C. C. A. 8th Circuit; Bernard v. Lea, 210 Fed. 583, 127 C. C. A. 219 (C. C. A. 4th Circuit); In re Progressive Wall Paper Co., 37 Am. Bankr. Rep. 207, 215, 230 Fed. 171; Andrew Jergens Co. v. Woodbury, Inc. (D. C.) 273 Fed. 952, 962; Leggett v. Banking Co., 1 N. J. Eq. 541, 23 Am. Dec. 728; Duke v. Markham, 105 N. C. 131, 10 S. E. 1017, 18 Am. St. Rep. 889; Alta Silver Mining Co. v. Alta Placer Mining Co., 78 Cal. 629, 21 Pac. 373; State v. Perkins, 90 Mo. App. 603; El Fresnal Irrigated Land Co. v. Bank of Washington (Tex. Civ. App.) 182 S. W. 701.

Second. Considering the third assignment of error as to ratification of the mortgage by the bankrupt's trustee, suffice to say that under the facts and circumstances of this case, there is not the slightest evidence of ratification either by the trustee in bankruptcy or the corporation, acting by and through its stockholders or directors.

[3] Third. The fourth assignment of error, for failure to hold the bankrupt's trustee estopped from denying the validity of the mortgage, is equally without merit. The bankrupt's trustee was charged with the duty of preserving the rights of unsecured creditors of the bankrupt, and he would have been negligent in the discharge of his duty if he had not at least attempted to vacate and set aside an invalid mortgage that would have diverted the entire estate from the general creditors to supposed lien creditors.

[4] Fourth. The fifth assignment of error, that the court erred in allowing the mortgage to be contested, without first restoring payment of the money advanced on the same, is, under the peculiar facts of this case, unavailing to the appellant as a defense. Undoubtedly the

principle contended for should prevail in some cases, but not in one like the present. It is quite apparent that no very appreciable part of the money raised by the invalid mortgage came to the bankrupt's estate, but was so manipulated that it inured to the benefit of the president of the bankrupt company, instead of to that of the company. Moreover, the infirmity in the mortgage sought to be fastened upon the bankrupt's property arose from the effort of the president of the company, acting in concert with the appellant company, to create a lien upon the assets of a company wholly insolvent, without first securing the lawful assent of the board of directors so to do, and without the knowledge or consent of either the directors or stockholders of the company. This transaction was consummated under such circumstances and in such manner as to have warned and admonished the appellant company of the illegality, if not of the doubtful propriety, of the acts of the president of the bankrupt company in so doing.

Sight should not be lost of the fact that this is not a transaction in which the directors of the company may have exceeded the powers granted them, or whether they may have acted irregularly in respect to the same; but one in which the president of the company, without power or authority so to do, placed a mortgage upon the property of an insolvent corporation, contrary to the charter and by-laws of the company, which illegal act on his part is being challenged by innocent unsecured creditors of the bankrupt, whose only source of security will be entirely dissipated if such an unlawful act is allowed to stand.

[5] Appellant earnestly insists that the mortgage having been signed by the president of the company and its assistant treasurer, with the genuine seal of the company attached, and tested by the latter, that the same was presumed to have been executed by due authority on the part of the company, and that any restriction on the authority of those executing the mortgage, if any existed, should be treated as matters of "indoor management." The inherent defects in the mortgage in question, taking into account the circumstances under which the same was executed and accepted by the appellant, are not such that can be attributed to mere methods of indoor management, and the mortgage held to be valid. Nor would the presence of the seal of the company serve to prevent the appellee trustee of the bankrupt's estate from showing the actual circumstances of the execution of the instrument, and hence its invalidity.

Appellant cites and relies on the leading English case of Royal British Bank v. Turquand, 6 Ellis & Blackburn, 327, and which it is contended has received the sanction of the Supreme Court of the United States in Louisville, etc., R. R. v. Louisville Trust Co., 174 U. S. 552, 574, 575, 19 Sup. Ct. 817, 43 L. Ed. 1081, to support its view that the validity of the instrument should be presumed from the presence of the company's genuine seal. But it cannot be successfully maintained that this presumption may not be rebutted by showing the real facts and circumstances surrounding the execution of the mortgage, and that the same was done without authority by the company, or knowledge or consent of its stockholders and directors. The most that the two cases cited hold is that with the genuine seal of the company at-

tached to the instrument in dispute, the presumption is that the same was placed there lawfully. Other authorities to the effect that where the authenticity of the seal is established the presumption is that authority to execute the instrument existed, or, to state it differently, that it is prima facie evidence of the same; but that the real facts can be shown, and the validity of the instrument tested in the light of such facts, there can be no question. Moreover, where knowledge of want of authority on the part of those executing the instrument exists in those acting upon it, or where the circumstances are such as to put persons accepting the instrument upon inquiry as to the power and authority of those executing it, and they fail to avail themselves of the same, they cannot plead ignorance and innocence of the infirmity in the instrument when assailed.

Counsel for appellant cited to the court a number of authorities claimed to sustain the validity of the mortgage in this case. They need not be referred to in detail, further than to say they have been fully examined and carefully considered, and in the judgment of the court contain nothing that would warrant it in sustaining the validity of the transaction here involved, or that are materially inconsistent with the holding of the court in this case, having regard to its peculiar facts and circumstances.

The decision of the District Court will be affirmed.

Affirmed.