NEWARK MORNING LEDGER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86355. Promulgated March 28, 1939.

*Jacob Schapiro, Esq.,* and *Harold Wisan, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* for the respondent.

OPINION.

SMITH: The only question before the Board in this proceeding is whether the assessment and collection of the deficiency agreed upon for the fiscal year ended April 30, 1933, is barred by the statute of limitations. The respondent admits that the deficiency is barred unless the waiver executed by L. T. Russell as president of the corporation is a valid waiver (sec. 275 (a), Revenue Act of 1932), and the petitioner agrees that if the waiver is valid the assessment and collection of the deficiency are not barred by the statute of limitations.

Section 276 of the Revenue Acts of 1932 and 1934 provides in part as follows:

(b) WAIVERS.—Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. * * *

Petitioner's contentions are that the waiver under consideration is invalid because not properly executed; that L. T. Russell, who signed the waiver as petitioner's president, had been relieved of the duties of that office prior to the time the waiver was signed and was without power or authority to bind the petitioner; that under the laws of the State of New Jersey authorization for L. T. Russell to sign the waiver was required from both of the trustees and that, since only one of the trustees gave such authorization, the waiver is not binding upon the corporation.

The petitioner does not dispute the fact that the signature of L. T. Russell and the corporate seal appearing upon the waiver are genuine. It is contended that the waiver is invalid because L. T. Russell was not president at the time of the execution of the document and that he was without power to act for the corporation since he did not have the authority from both trustees to sign the waiver.

The evidence is clear that the respondent and the revenue agent who secured the waiver had no knowledge at the time that it was not properly executed by L. T. Russell, president of the corporation. The respondent acted upon the belief that the waiver was valid.

The contentions made here against the validity of the waiver are very similar to those made in *T. H. Symington & Son, Inc.*, 35 B. T. A. 711, 740, which were stated by the Board as follows:

The petitioner contends that Magothy [the taxpayer corporation], upon dissolution on March 15, 1928, ceased to exist and could thereafter exercise no corporate function; that its officers became *functus officio*, without authority to perform any act in the name of the corporation, and that therefore the purported waivers executed by the former vice president and treasurer of the corporation were invalid and void. It is further contended that none but the directors, as trustees in dissolution and liquidation, were empowered to act for or on behalf of Magothy; that the trustee powers of the directors could only be exercised in concert and not individually; that the former vice president and treasurer of the corporation, who was also a director and trustee, had no authority from his cotrustees to execute the waivers; and that, therefore, the waivers executed by him are invalid and void and not binding upon the corporation.

The Board upheld the validity of the waiver, saying:

In the instant case L. A. Townsend, who executed the waiver in behalf of the dissolved corporation, was its vice president and treasurer at the time the corporation was dissolved, and he was also a director. At no time did he notify the Commissioner or claim that he was not acting within the scope of his authority in signing the waiver. On the contrary the evidence shows that the waiver in question was presented to the Commissioner in the regular way to secure a postponement of an assessment against the corporation while the Commissioner continued to examine the question of the corporation's tax liability for the year in question. As said by the court in *Monarch Mills* v. *Jones, supra*, "The execution of the waivers was merely an incidental transaction in the liquidation of the corporate affairs, well within the powers conferred by law."

In *Carey Manufacturing Co.* v. *Dean* (C. C. A., 6th Cir.), 58 Fed. (2d) 737; certiorari denied, 287 U. S. 623, the validity of a waiver which had been signed on behalf of the corporation by its secretary was disputed because of the limited power of the secretary under the corporation's bylaws and regulations. In the course of its opinion the court said:

Appellant cannot be heard to say that its president and comptroller were unauthorized to execute the waiver. They were in charge of the whole tax matter. *Independent Ice & Cold Storage Co.* v. *Com'r.* 50 F. (2d) 31, 33 (C. C. A. 5). The waiver involved no more than giving the consent of the taxpayer in writing to the extension of the limitation period. These officers were represented by counsel who were with them at the conference and no doubt advised them (if we can assume that they needed such advice) of the pressing necessity of such consent. The urgent necessity of the matter creates an inference that it was not overlooked. See *Greer* v. *U. S.*, 245 U. S. 559, 561, 38 S. Ct. 209, 62 L. Ed. 469.

Having authority to act, they had the authority to direct the secretary to act for them [see *Trustees for O. & B. S. Coal Co.* v. *Com'r.*, 43 F. (2d) 782, 784 (C. C. A. 4) ; *L. J. Christopher Co.* v. *Com'r.*, 60 App. D. C. 370, 55 F. (2d) 530, 531], and there is room for the inference that they did. The statute did not require them to sign the waiver personally. It required the taxpayer to sign it (section 250 (d) of the Revenue Act of 1921, 42 Stat. 227 ; section 278 (c) of the Revenue Act of 1924, 43 Stat. 253 (26 USCA § 1060), and it is not unreasonable to conclude that the secretary signed for the taxpayer at their instance or that of some authorized agent. * * *

The court further stated :

* * * The seal upon the waiver of December 20, 1924, is prima facie evidence that it was placed there by the secretary with the authority of appellant. *Maryland Finance Corp.* v. *Duvall*, 284 F. 764, 770 (C. C. A. 5) *Bliss* v. *Harris*, 38 Colo. 72, 87 P. 1076.

In *Independent Ice & Cold Storage Co.* v. *Commissioner* (C. C. A., 5th Cir.), 50 Fed. (2d) 31, the court upheld the validity of a waiver signed for the taxpayer, its secretary-treasurer, who, it was contended, was without authority or power to bind the corporation. In its opinion the court said :

"Taxation, as it many times has been said, is eminently practical." *Tyler* v. *U. S.*, 281 U. S. 503, 50 S. Ct. 356, 359, 74 L. Ed. 991, 69 A. L. R. 758.

It has to do with matters the great majority of which ought to be, and usually are, disposed of informally, and, where rights are substantially preserved, defects in form may not defeat them. *Florsheim Bros. Co.* v. *U. S.*, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542 ; *Stange* v. *United States*, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. ——, and courts will not permit a "sticking in the bark" to defeat a waiver voluntarily executed within the scope of the implied powers of him who executed it, and which was acted upon by the officer of the United States to whom it was addressed. *Florsheim Bros. Co.* v. *U. S.*, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542 ; *Stange* v. *U. S.*, 282 U. S. 271, 51 S. Ct. 145, 75 L. Ed. —— ; *Lucas* v. *Hunt* (C. C. A.) 45 F. (2d) 781, for a waiver is not a contract; it is just what its name implies, a waiver voluntarily and unilaterally of a defense by the taxpayer. *Aiken* v. *Burnet*, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. —— ; *Brown* v. *Burnet*, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. —— ; *Burnet* v. *Railway Equipment Co.*, 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed.——. * * *

*Weatherford, Crump & Co.* v. *Bass*, 63 Fed. (2d) 465, involved the question of the validity of a waiver signed and executed by the president and director of a dissolved Texas corporation. Under the laws of the State of Texas the directors of the dissolved corporation became trustees of the creditors and stockholders, in the absence of appointment of a trustee by the court. In holding the waiver valid, the court said :

* * * It appeared that the above-mentioned instrument dated March 10, 1925, was signed in the name and behalf of the taxpayer at the instance or direction of Mr. E. G. Ainslie, who was empowered to act for the taxpayer in executing that instrument or in authorizing the execution of it by another person for and in the name of the taxpayer. In the circumstances attending the writing and transmission of the above-mentioned letter of Mr. Ainslie the above set out part of

it amounted to a statement or representation that the above-mentioned instrument dated March 10, 1925, was the act of the taxpayer. That statement or representation, being made on behalf of the taxpayer by its lawfully authorized representative, in legal effect was the same as if it had been made by the taxpayer itself. * * *

The waiver here was signed by the president of the petitioner corporation under the direction of Henry S. Puder, one of the two acting trustees. No disclosure was made by Puder or any representative of the taxpayer that the taxpayer was being operated under a trusteeship or that the taxpayer's president who signed the waiver did not have authority to do so.

*Lucas* v. *Hunt*, 45 Fed. (2d) 781, is a case in point. There, also, a waiver was signed by the president of a dissolved corporation, who was also one of the liquidators, after the expiration of the statutory three-year liquidation period. Holding the waiver valid, the court said:

If the waiver was valid, then it is rightly conceded by counsel for Hunt that the assessment was not barred; but it is contended on his behalf that, the time within which he was authorized to act as liquidator having expired, the waiver had no binding force or effect. We are of opinion that Hunt, by signing the waiver estopped himself to question its validity, with the result that he was bound to respond to the assessment to the extent of funds in his hands which belonged to the dissolved corporation taxpayer. The circumstances all show that the commissioner relied on the waiver and is therefore entitled to claim the equitable estoppel asserted by counsel in his behalf.

In *Jaffee* v. *Commissioner*, 45 Fed. (2d) 679; certiorari denied, 283 U. S. 853, it was held that the liquidators of a corporation had authority to appoint others to execute a waiver on behalf of the corporation.

It has been held in a number of cases that waivers are not invalid because signed by only one of several executors, *James S. Darcy et al., Executors*, 26 B. T. A. 841; affd., 66 Fed. (2d) 581; certiorari denied, 290 U. S. 705; *Philip C. K. Bartlett et al., Executors*, 16 B. T. A. 510; or by only one of several liquidating trustees, *Commissioner* v. *Godfrey*, 50 Fed. (2d) 79; certiorari denied, 284 U. S. 653; *Commissioner* v. *Angier Corporation*, 50 Fed. (2d) 887; certiorari denied, 284 U. S. 673; *Helvering* v. *South Penn Oil Co.*, 68 Fed. (2d) 420; *Wells-Elkhorn Coal Co.*, 27 B. T. A. 198.

Since the waiver here under consideration was regular upon its face and the Commissioner accepted it as valid and relied upon it without any knowledge of its possible defects, the taxpayer should not now be permitted to attack its validity on the ground that the taxpayer itself failed to execute it properly. "Taxpayers cannot repudiate waivers of the statute of limitations upon which the Government relied." *Commissioner* v. *New York Trust Co.*, 54 Fed.

(2d) 463; certiorari denied, 285 U. S. 556.  See also *Aiken* v. *Burnet*, 282 U. S. 277; *Loewer Realty Co.* v. *Anderson*, 31 Fed. (2d) 268.

In our opinion the waiver under consideration in this proceeding is a valid waiver and we therefore hold that the deficiency is not barred.

> *Judgment will be entered for the respondent for the deficiencies agreed upon for the fiscal years ended April 30, 1933, and April 30, 1934, and for no deficiency for the fiscal year ended April 30, 1935.*