SIDNEY J. KAGAN, trustee in bankruptcy, *vs.* BENJAMIN
B. LEVENSON & others.

Suffolk.    February 7, 8, 1956. — May 4, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Limitations, Statute of. Contract*, Implied contract. *Conversion. Bank-
ruptcy*, Statute of limitations, Claim by trustee, Mortgage by bank-
rupt. *Corporation*, Officers and agents, Mortgage. *Agency*, Scope of
authority or employment, Ratification. *Mortgage*, Of personal prop-
erty: validity. *Waiver. Equity Pleading and Practice*, Waiver.
*Error*, Whether error harmful. *Evidence*, Stated ground of objection,
Contradiction of witness.

A suit in equity by a trustee in bankruptcy commenced more than two
   but less than six years after the adjudication and after his cause of
   action arose would be barred by § 11 of the bankruptcy act, U. S. C.
   (1952 ed.) Title 11, § 29 (e), and G. L. (Ter. Ed.) c. 260, § 2A, inserted
   by St. 1948, c. 274, § 2, if the plaintiff's claim was in tort for conversion;
   if the plaintiff's claim was in contract the suit would not be barred
   under § 11 of the bankruptcy act and G. L. (Ter. Ed.) c. 260, § 2, as
   appearing in St. 1948, c. 274, § 1.   [102–103]
A claim of a trustee in bankruptcy for money in the hands of one who,
   prior to the bankruptcy, had received the proceeds of a sale of the
   bankrupt's property for application to certain of his debts and, after
   such application, was holding the remaining balance as a stakeholder
   for payment to the person entitled to it was not in tort for conversion
   but in contract for money had and received.   [103]
The president and the treasurer of a business corporation had no authority
   merely by virtue of their offices to give a mortgage of a substantial
   portion of the corporation's property.   [105]
Whether, in the absence of formal authority from a corporation by
   vote to its president and treasurer to give a mortgage of a substantial
   portion of its property, the directors had otherwise authorized the
   giving of the mortgage or subsequently had ratified it was a question
   of fact in a suit in equity and a negative finding by the judge, not
   being plainly wrong on the evidence, must stand.   [104–105]
A trustee in bankruptcy of a corporation which had given a mortgage had
   standing to challenge the validity of the mortgage on the ground of
   want of authority of those purportedly acting for the corporation in
   giving it.   [105–106]
A defendant in a suit in equity who based a counterclaim on a mortgage
   given by a corporation and who appealed from a decree dismissing his
   counterclaim following trial of the issue of the authority of those
   purporting to act for the corporation in giving the mortgage and a
   finding that they had no authority, without his having raised the

point that their lack of authority had not been pleaded, waived that point and was not entitled to raise it in this court. [106]

In a suit in equity by a trustee in bankruptcy involving the issue whether the plaintiff or the defendant was entitled to money paid into court by a stakeholder, there was no merit in a contention by the defendant in this court that the admission in evidence of the bankruptcy schedules of the bankrupt was harmful error in that a decision of the judge in favor of the plaintiff might have been influenced by the schedules "by showing that there were a number of unsecured creditors who might receive some money after the bankruptcy fees and expenses" if the defendant's claim were held to be invalid. [106]

A party who in the trial court specifically stated a certain ground, and only that ground, of objection to evidence offered by the opposing party and admitted by the judge was not entitled to urge in this court other grounds for excluding the evidence. [107]

On the record there was no error at a trial in the admission in evidence of the whole, rather than only parts, of a transcript of a previous bankruptcy examination of a witness to contradict his testimony. [106-107]


BILL IN EQUITY, filed in the Superior Court with a writ in trustee process dated November 3, 1954.

The suit was heard by *Warner, J.*

*Morris Michelson,* (*Abraham Zintz* with him,) for the defendants Rodriques.

*Bernard P. Rome,* (*Julius Thannhauser* with him,) for the plaintiff.

SPALDING, J. This is a suit by the trustee in bankruptcy of Boston-New York Transportation Co., Inc., hereinafter called the company, to recover the sum of $18,000 from the defendant Levenson. This sum represents the balance remaining from the proceeds of a sale (prior to the bankruptcy) of the assets of the company to the Quinn Freight Lines Inc. for $125,000. Jesuino Rodriques and his wife Maria who were also parties defendant included a counterclaim in their answer under which they asserted a claim to the $18,000 by reason of an alleged chattel mortgage held by them on the property of the company. The judge made findings of fact and the evidence is reported.

The relevant facts are these. The company, a Massachusetts corporation, was engaged in the trucking business. Its president was Paul Olivier, and Manuel Cabral was its treasurer. Both Olivier and Cabral were directors, as were

also Jesuino Rodriques, Alfred Santos, and Frank Santos. Of the one hundred shares of stock issued by the company Jesuino Rodriques owned twenty-two shares. On July 26, 1950, an agreement was executed under which the company agreed to sell its assets to Quinn Freight Lines Inc. for $125,000. This agreement was approved by the interstate commerce commission on January 7, 1952. The negotiations for the sale had been conducted by the defendant Levenson who had been counsel for the company. The proceeds of the sale were turned over to Levenson "for disposition for payment of bills of the company which might have been chargeable to the . . . [purchaser]." As of April 1, 1952, Levenson had paid out all of the $125,000 except $18,000 which he held as a stakeholder to await the determination of the conflicting claims against the fund. After the present suit was commenced he paid the money into court and a decree was entered dismissing the bill as to him.

The present controversy is between the company's trustee in bankruptcy and the defendants Jesuino and Maria Rodriques who, as stated above, assert a claim to the fund by reason of an alleged chattel mortgage in their favor. The facts with respect to this aspect of the case will be stated later in the opinion. The judge found that the fund belonged to the plaintiff and a decree was entered ordering the clerk of court to pay the fund to the plaintiff, and it was further ordered that the counterclaim of Jesuino and Maria Rodriques be dismissed. Jesuino and Maria, who will hereinafter be called the defendants, appealed.

The defendants argue that the statute of limitations, which was pleaded, bars the plaintiff's suit. Section 11 of the bankruptcy act (U. S. C. [1952 ed.] Title 11, § 29 [e]) provides that a "receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the

petition in bankruptcy." The company was adjudicated a bankrupt on April 22, 1952, and the present suit was commenced in November, 1954, more than two years later. It is obvious from the wording of the statute just quoted that where a cause of action is grounded on State law the State statute of limitations applies, and it has been so held. *Austrian* v. *Williams*, 198 Fed. (2d) 697 (C. A. 2). *MacLeod* v. *Kapp*, 81 Fed. Sup. 512 (D. C. S. D. N. Y.). Compare *Herget* v. *Central National Bank & Trust Co.* 324 U. S. 4.

This brings us to the question of the nature of the plaintiff's claim. The defendants take the position that the plaintiff's claim is in essence one for conversion and hence sounds in tort. If that contention is correct then the present suit would be barred because not commenced within two years from the date of adjudication. The present suit, of course, is grounded on State law, but the plaintiff would not be entitled to any period extending beyond the two year period fixed by § 11 of the bankruptcy act because under our statute of limitations an action of tort is barred unless commenced within two years. G. L. (Ter. Ed.) c. 260, § 2A, inserted by St. 1948, c. 274, § 2. This statute would apply in equity as well as at law. *Ballentine* v. *Eaton*, 297 Mass. 389, 394. But if the suit is founded on a claim sounding in contract it would not be barred for six years and the present suit would be seasonable. G. L. (Ter. Ed.) c. 260, § 2, as appearing in St. 1948, c. 274, § 1.

We are of opinion, as was the trial judge, that the suit here is based on a claim sounding in contract. In essence the claim is one for money had and received. The usual form of action to recover from another money which in equity and good conscience he is not entitled to keep is in contract. *Vieira* v. *Menino*, 322 Mass. 165, 168. *Sherman* v. *Werby*, 280 Mass. 157, 160. *Nelson* v. *Piper*, 213 Mass. 531, 533. *Wiley* v. *Connelly*, 179 Mass. 360, 365. The defendant Levenson was in the position of a stakeholder and he held the fund in question only to pay it to the person rightfully entitled to it. He was in no sense a converter. It follows that the plaintiff's claim is not barred.

The defendants under their counterclaim assert a right to the $18,000 paid into court by Levenson on the ground that this arose from the sale of the company's assets on which they held a chattel mortgage. A chattel mortgage running to the defendants dated June 14, 1949, and purporting to have been executed by the company by Paul Olivier as president and Manuel Cabral as treasurer, was introduced in evidence. It was recorded on June 20, 1949, in the clerk's office of the city of Chelsea where the company had its principal place of business. The consideration stated in the mortgage was $15,000. No mortgage note was introduced. Notwithstanding the amount stated in the mortgage the defendants are seeking the entire amount of the fund, $18,000. It is their contention that they lent from time to time sums aggregating $17,100 and the balance represents an interest charge of $900. The judge found that the defendant Maria never gave any consideration to the company. He also found that the only loan to the company by Jesuino was one for $2,000 on March 3, 1949. On this finding, which is amply supported by the evidence, Jesuino would be entitled to a lien against the fund only to the extent of the debt, $2,000. *Hannan* v. *Hannan,* 123 Mass. 441. *Saunders* v. *Dunn,* 175 Mass. 164. Am. Law of Property, § 16.69. Tiffany on Real Property (3d ed.) § 1401.

But another finding of the trial judge cuts deeper and justifies his ultimate conclusion that the defendants are not entitled to any portion of the fund. The judge found that neither Olivier nor Cabral had authority to execute either the mortgage or any note in connection therewith on behalf of the company. This finding cannot be said to be plainly wrong and is fatal to the defendants' counterclaim.

There was oral testimony by Cabral that there had been a vote of the company authorizing the giving of the mortgage to the defendants. However, no official record of such a vote was produced and in fact during a previous examination of Cabral in connection with the bankruptcy proceedings of the company he stated that he did not know whether

there was a vote or not. It is true that the authority to execute the mortgage need not be established by a formal vote of the company. The execution of the mortgage by its president and treasurer "with the knowledge and concurrence of the directors, or with their subsequent and long continued acquiescence, may properly be regarded as the act of the corporation." *Sherman* v. *Fitch*, 98 Mass. 59, 64. But nothing less than that would suffice. It is not within the implied powers of an officer of a business corporation to execute and deliver a mortgage of a substantial portion of its property.[1] *Horowitz* v. *S. Slater & Sons, Inc.* 265 Mass. 143, 147. *England* v. *Dearborn*, 141 Mass. 590, 592. *Selden Truck Corp.* v. *Selden Truck Service Co.* 257 Mass. 58, 62. *De la Vergne Refrigerating Machine Co.* v. *German Savings Institution*, 175 U. S. 40, 53. *Maryland Finance Corp.* v. *Duvall*, 284 Fed. 764, 766–767 (C. C. A. 4). Whether or not there was authority for the execution of the mortgage in question or subsequent conduct by the directors amounting to acquiescence or approval was a question of fact for the trial judge. See *Frederick* v. *Letteney*, 214 Mass. 46. His finding that no such authority was established is sufficiently comprehensive to embrace lack of original authority and lack of subsequent approval by the directors.

The defendants argue that the plaintiff as trustee in bankruptcy of the company cannot be heard to challenge the authorization of the mortgage and cite decisions such as *Greene* v. *Reconstruction Finance Corp.* 100 Fed. (2d) 34 (C. C. A. 1), and *Royal Indemnity Co.* v. *American Bond & Mortgage Co.* 289 U. S. 165, 170–171. But those cases are not controlling, for they hold only that a trustee in bankruptcy cannot take advantage of statutes designed for the protection of stockholders and which have nothing to do with the interests and rights of creditors. That is not the situation here. The plaintiff was not estopped to question

---

[1] The mortgage here, which covered a substantial portion of the company's assets, included the following: Nine trailers, eight tractors, ten trucks, all after acquired vehicles, all office furniture and equipment, all interstate rights issued by the interstate commerce commission, and all rights and permits issued by the several States.

the mortgage. *Maryland Finance Corp.* v. *Duvall,* 284 Fed. 764 (C. C. A. 4).

The defendants further urge that the question of authorization was not pleaded and was not an issue in the case. This contention cannot prevail. It is apparent from both the evidence and the finding of the judge that this issue was tried in the court below. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review of the acts of the trial judge." *Santa Maria* v. *Trotto,* 297 Mass. 442, 447. See *Little* v. *Massachusetts Northeastern Street Railway,* 229 Mass. 244, 245–246; *Krinsky* v. *Stevens Coal Sales Co. Inc.* 309 Mass. 528, 533; *John T. D. Blackburn, Inc.* v. *Livermore,* 317 Mass. 20, 21; *P. A. Dolan Co.* v. *P. S. Thorsen Co. of Massachusetts,* 324 Mass. 376, 377. It does not appear that the question of pleading was raised at the trial. *Di Franco* v. *West Boston Gas Co.* 262 Mass. 387, 390. It cannot be raised as of right here for the first time. *Foster* v. *Everett, ante,* 14, 18.

The defendants contend that the trial judge erred in permitting the plaintiff to put in evidence the bankruptcy schedules of the company. It is not apparent to us what bearing these schedules had on the issues before the court. The only harm suggested by the defendants is that they might have prejudiced the trial judge "by showing that there were a number of unsecured creditors who might receive some money after the bankruptcy fees and expenses if the . . . [defendants'] mortgage were held invalid." That such a consideration would have improperly influenced the judge's decision is so lacking in merit as to require no discussion.

The defendant Jesuino testified in detail as to the various transactions which gave rise to the alleged loan of $18,000 to the company. On cross-examination he was asked if he had not testified differently concerning these transactions at a bankruptcy hearing. At the conclusion of this examination one Donovan, an attorney, was called to the stand by the plaintiff and was asked if he were present during the

bankruptcy examination of Jesuino and he replied that he was. A typewritten transcript of the examination was then shown to the witness and he was asked if it was a correct statement of the questions and answers put and made during the examination, and he replied that it was. The plaintiff then offered the transcript in evidence subject to the defendants' exception. It is now argued that the evidence was inadmissible because it was a copy rather than an original and therefore was not the best evidence. It is likewise argued that this was not shown to be an instance of past recollection recorded and hence the transcript was not admissible within the rule of *Fisher* v. *Swartz*, 333 Mass. 265. We do not pause to discuss these points as it is apparent that they are afterthoughts. When the evidence was offered counsel made the following objection: "I object, of course. Can't you take out the things you want?" It is thus apparent that the objections now pressed were not in the mind of counsel and that his objection reasonably conveyed to the judge the impression that it was grounded solely on the fact that all of the questions and answers, rather than some, were being introduced. Having stated specifically the basis of their objection, the defendants, in fairness, ought not to be permitted to urge other grounds in this court. *Holbrook* v. *Jackson*, 7 Cush. 136, 154. *Burton* v. *Driggs*, 20 Wall. 125, 133. *Bain* v. *United States*, 262 Fed. 664, 668. *Norwood* v. *Great American Indemnity Co.* 146 Fed. (2d) 797, 800 (C. C. A. 3). Wigmore on Evidence (3d ed.) § 18. The original objection is not now pressed but if it were it would be lacking in merit. The judge could very properly have taken the view that the entire examination should have been admitted in order to obtain a complete picture of the discrepancies between what the witness said in the examination and his testimony at the trial. Virtually all the examination related to the same subject and a separation of it would have been difficult, if not impossible, and wasteful of much time to no useful purpose.

*Decree affirmed with costs of this appeal.*