SABRINA NUDD *vs.* NATHAN S. HAMBLIN.

The omission to disclose a trespass upon real estate to the owner, if there is no fiduciary relation between the parties and the owner has the means of discovering the facts and nothing has been done to prevent him from discovering them, is not such a fraudulent concealment of the cause of action as will prevent the operation of the statute of limitations, under Gen. Sts. *c.* 155, § 12.

TORT for breaking and entering the plaintiff's close in Groton, and cutting and carrying away wood and timber therefrom. The defendant amongst other things relied upon the statute of limitations. At the trial in the superior court, before *Rockwell,* J., a verdict was returned for the plaintiff, upon facts and under instructions which sufficiently appear in the opinion. The defendant alleged exceptions.

*D. S. Richardson & S. A. Brown,* for the defendant, cited *Rouse* v. *Southard,* 39 Maine, 404 ; *Mc Kown* v. *Whitmore,* 31 Maine, 448 ; *Cole* v. *McGlathry,* 9 Greenl. 131 ; *Farnam* v. *Brooks,* 9 Pick. 246 ; *Rice* v. *Burt,* 4 Cush. 208 ; *Hall* v. *Perkins,* 3 Wend. 631 ; *Irvine* v. *Kirkpatrick,* 3 Eng. Law & Eq. R. 34.

*H. F. French & J. Q. A. Griffin,* for the plaintiff, cited *Welles* v. *Fish,* 3 Pick. 74 ; *Homer* v. *Fish,* 1 Pick. 435 ; *First Mass. Turnpike Corp.* v. *Field,* 3 Mass. 201 ; *Way* v. *Cutting,* 20 N. H. 187.

CHAPMAN, J. The writ is dated June 17, 1862, and the trespasses which it alleges were committed in 1849 and 1850. The defendant relies on the statute of limitations, (Gen. Sts. *c.* 155,) and, in avoidance of this defence, the plaintiff relies on the 12th section of the statute, which provides that " if a person liable

to any of the actions mentioned in this chapter fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within six years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards." This section is a reënactment of Rev. Sts. *c.* 120, § 12. Long before we had such a provision in our statute of limitations, it was held that a fraudulent concealment of the cause of action would prevent the operation of the statute until the plaintiff had obtained knowledge of its existence. *First Mass. Turnpike Corp.* v. *Field,* 3 Mass. 201. In that case the defendants had contracted to construct a turnpike for the plaintiffs. They did some of the work deceitfully, and covered the defective work with earth. They then represented that they had completed their work, and thereupon they received their pay for it. The defect was discovered after the lapse of six years, and it was held that on account of the fraudulent concealment of the defect by the defendants, the statute of limitations did not bar the action brought by the corporation to recover damages for the defective work. This doctrine was again held in *Homer* v. *Fish,* 1 Pick. 435, and *Welles* v. *Fish,* 3 Pick. 74. In *Farnam* v. *Brooks,* 9 Pick. 244, it was held to be applicable to a suit in equity.

The question in the present case is, whether the facts stated amount to a fraudulent concealment, and in the case of *Farnam* v. *Brooks* the question of what constitutes a fraudulent concealment is discussed. It is there held that it is necessary to prove a concealment, and a discovery of the fraud within six years ; but that there is no concealment if the party possesses the full means of acquiring knowledge of the facts, and that the fraud must be actual and not merely constructive. The court cite the case of *Cole* v. *Mc Glathry,* 9 Greenl. 131. In that case the defendant had received of the plaintiff funds to pay certain debts, and falsely affirmed that he had paid them. It was held that though he was guilty of a breach of moral and legal duty, having added falsehood to his neglect to pay, yet it was not such a fraudulent concealment as would take the case out of the statute, because

the plaintiff had the means of discovering the truth at all times, by inquiry of the persons who should have received the money This doctrine has again been held in Maine, in *McKown* v. *Whitmore*, 31 Maine, 448. This was an action to recover money which the defendant had agreed to deposit in a certain bank for the plaintiff, and which he told the plaintiff that he had deposited. It was held that, even if this statement was untrue, it did not constitute a fraudulent concealment, because the plaintiff had at all times the means of discovering the truth. In *Rouse* v. *Southard*, 39 Maine, 404, which was an action against a part owner of a vessel for repairs, the statute of limitations was pleaded, and to avoid its operation the plaintiff offered evidence that the defendant had denied that he was a part owner. But, as the ownership of the vessel was a fact which could have been ascertained without inquiry of the defendant, it was held that his denial was not a fraudulent concealment of the fact.

In *Way* v. *Cutting*, 20 N. H. 187, a doctrine was held which must be regarded as limiting the doctrine of the cases cited above, if it be not inconsistent with that doctrine. It was held that in a case where the plaintiff had a right to rely upon the representations of the defendant, the fraudulent misrepresentation of the defendant amounted to a concealment, although the plaintiff had the means of testing the truth and detecting the fraud. But there is nothing in the facts stated in the present case which makes it necessary to discuss such a limitation of the doctrine, because here was no concealment by false representations, and there was no fiduciary relation between the parties.

The general ground of policy upon which all statutes of limitation stand is stated in the old maxim, *Vigilantibus non dormientibus jura subveniunt.* Broom's Max. (3d ed.) 694. While on the one hand it is important that the law should protect every citizen against fraud and wrong, on the other hand it is equally important that those who seek the aid of judicial tribunals should not sleep over their rights, but ascertain and prosecute them with vigilance. The statute of limitations therefore shuts the doors of the courts against a party unless he brings

his suit within the prescribed time, although his claim is still due, and good faith would require its payment. And when he would take advantage of the exception which gives him a further time in case the cause of action has been fraudulently concealed from him, yet, if he had the means of discovering the fact, his want of knowledge is to be attributed to his own want of vigilance, and not to concealment by others.

In *Farnam* v. *Brooks, ubi supra,* the court say that full means of detecting the fraudulent concealment are the same as knowledge.

Applying these principles to the evidence stated in the report, we find nothing to take the case out of the operation of the statute. The plaintiff was one of the heirs of Winslow Parker and the *locus in quo* was part of a tract of woodland, the whole of which contained thirty-nine acres and a half. The commissioners appointed by the probate court to make partition of the estate of Winslow Parker among his heirs set off to the plaintiff in the year 1825 about seventeen acres of the northeasterly part of this tract, and a part of the remainder to her sister Nabby Parker, who afterwards married David Hale. The partition was by metes and bounds. In November 1848 the defendant and one Nutting purchased of Hale and wife the wood and timber standing on their lot, and took a lease till April 1851, to enable them to cut and remove the same. While getting it, during the years 1849 and 1850, they cut off the wood and timber from nearly seven acres of the plaintiff's adjoining land. The evidence tends to show that Hale sold it to them, but that they were informed that he had sold a part of the plaintiff's wood, and had some reason to believe that this was the fact, and that they were trespassers. But assuming that they were wilful trespassers, a mere wilful trespass not committed by stealth is not legally a fraud, however wrong and unjust it may be. While the defendant was cutting the wood, one Reed expressed to him the opinion that he was cutting upon the plaintiff's land; but the defendant made no request that the fact should be concealed, and did no act to prevent the plaintiff from obtaining knowledge of it. The plaintiff was at that time

under coverture, being the wife of Thomas Nudd, who was acquainted with the lot and its boundaries. They lived about three miles from it, and a private road led to it. The record of the partition was in existence, and the defendant, having some suspicion that he had trespassed upon the plaintiff's land, obtained a copy in 1851, from which he ascertained that his suspicions were well founded. Nudd died in February 1853, leaving the property again in charge of the plaintiff. The court are of opinion, upon all the evidence reported, and in view of the authorities cited, that the plaintiff as well as her husband had the means of ascertaining the cause of action by the exercise of ordinary vigilance, and that, as the defendant took no pains to conceal his acts, either while he was committing the trespasses or at any time afterwards, his mere neglect to go to the plaintiff and give her information of what he had done is not such concealment on his part as the statute contemplates.

*Exceptions sustained.*