**TRACERLAB, INC.**

v.

**INDUSTRIAL NUCLEONICS CORPORATION.**

Civ. A. No. 58–723–F.

United States District Court
D. Massachusetts.
April 12, 1962.

Walter D. Wekstein, Manuel K. Berman, John M. Russell, Boston, Mass., for plaintiff.

James D. St. Clair, Boston, Mass., Clayton C. Hoskins, Columbus, Ohio, for defendant.

FRANCIS J. W. FORD, District Judge.

Plaintiff in this action alleges that in 1950 defendant wrongfully acquired and began using certain trade secrets, the property of plaintiff, relating to radio-active measuring devices known as "beta gauges." It further alleges that on April 1, 1958, a patent was issued to defendant embodying principles involved in plaintiff's trade secrets and that up to the time of the issuance of the patent, defendant had concealed from plaintiff its alleged violations of plaintiff's rights.

Defendant moves for summary judgment on the grounds of the statute of limitations and laches. The action was commenced on July 9, 1958. The applicable period of limitations, Mass.G.L. Ch. 260 § 2A, is two years.[1] However, § 12 of the chapter provides:

"§ 12. Extension of Time in Case of Fraudulent Concealment.

"If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."

For the purposes of this motion it may be assumed, as alleged by plaintiff, that in 1949 one Foster and one Chope were employed by plaintiff to do research work, that in the course of their employment they learned certain secret processes of plaintiff, that in 1950 they left plaintiff's employment and with certain other persons caused defendant corporation to be formed, that they communicated plaintiff's trade secrets to defendant, and that since that time defendant has incorporated those trade secrets in the beta gauges which it has manufactured and sold.

Defendant further relies on admissions made by officers of the plaintiff in the course of their testimony on pre-trial depositions. Thus Barbour, the President of plaintiff from 1946 to 1955, testified that he knew Chope and Foster knew plaintiff's secrets and that they had left to go into the business of producing beta gauges and that within a year after they left he knew they were putting out a competitive product, that he then felt

1. The Massachusetts statute of limitations applies in equity as well as at law. Kagan v. Levenson, 334 Mass. 100, 103, 134 N.E.2d 415, 62 A.L.R.2d 704; Director of Liquidations v. Exchange Trust Company, 313 Mass. 351, 353, 47 N.E.2d 296.

the design of plaintiff's beta gauge had been plagiarized from Tracerlab. In 1950 he considered taking legal action, informed third persons he was going to do so and in fact consulted counsel who advised against filing suit. Plaintiff's Vice President, Myers, testified that in early 1954 he formed the opinion defendant was using the same method of beta gauge standardization as did plaintiff, that other officials of plaintiff agreed with him and that Barbour had said that in his opinion Chope and Foster had taken designs in process at Tracerlab and used them in making defendant's product. There was other testimony in the depositions as to the existence of a belief among plaintiff's officials in 1950 and the following years that defendant was using trade secrets of plaintiff communicated to defendant by Chope and Foster.

It appears also from the testimony of these officials that none of them prior to 1958 had seen any of the plans of defendant's beta gauge or had examined the inside of the device so as to see how it was constructed and how it worked. They had made numerous efforts to do so but had been unsuccessful.

 Plaintiff contends that its allegation that defendant concealed its use of plaintiff's trade secrets and that consequently the running of the period of limitations was tolled by § 12 raises an issue of material fact which bars the granting of a motion for summary judgment. However, concealment tolls the running of the statute only when it is successful in depriving plaintiff of the knowledge of the existence of his cause of action. § 12 has no application when the plaintiff actually has knowledge of the facts constituting the cause of action or at least means of discovering them under circumstances which should have put him on inquiry. Falk v. Levine,

D.C., 66 F.Supp. 700; Brackett v. Perry, 201 Mass. 502, 87 N.E. 903; Nudd v. Hamblin, 8 Allen 130, 132, 90 Mass. 130, 132. In this case, on the admission of plaintiff's own principal officers, they had knowledge of the alleged misappropriation of their trade secrets as early as 1950. This was not, as defendant argues, mere suspicion, but rather a firm belief that defendant was using their trade secrets, a belief strong enough to lead them to take at least some steps towards bringing suit. It was not necessary that they should know all the facts, or that all the evidence needed to prove their case should then be in their hands. Sanborn v. Gale, 162 Mass. 412, 38 N.E. 710, 26 L.R.A. 864. Under the liberal discovery provisions of the Federal Rules of Civil Procedure a plaintiff who believes in good faith that he has a cause of action is afforded ample opportunity after commencing his action to discover the facts needed for proof of his case.[2]

 The defense of laches is not supported by a mere showing that plaintiff has failed to act promptly to enforce his rights. However, in the present case there are additional facts which would render it inequitable to allow plaintiff to prosecute its claim at this late date. As has already been pointed out, plaintiff knew of the existence of its cause of action and had available the means of discovering the additional facts needed to prove its case. It has shown no justifiable excuse for delay. On the other hand, this delay has worked hardship on defendant. In 1950 when the alleged violation of plaintiff's rights first occurred, defendant was a small company, newly organized, and starting business on a small scale largely on borrowed capital. In the next eight years it built up its business to the point where its annual sales and its investment in plant and facilities amounted to millions of dollars.

2. Under the complaint it might be open to plaintiff to show a continuing violation of its rights extending into the two-year period immediately preceding the commencement of this action. However, although recovery as to recent violations might not be barred by the statute of limitations, the considerations to be set forth for upholding the defense of laches make it proper to hold that laches bars assertion of any part of the claim. Cohen v. Bailly, 266 Mass. 39, 49, 165 N.E. 7.

Meanwhile, it has become more difficult to obtain the evidence needed by the parties, especially as to what actually occurred in 1949 and 1950. Witnesses have forgotten facts or are not so readily available and some documentary evidence appears to have been destroyed. This action was commenced almost four years ago and despite diligent efforts of counsel, discovery has not yet been completed by either party. Plaintiff should have brought its action promptly when it knew its rights were being violated. It cannot expect relief from equity when it sleeps on its rights and permits defendant, in reliance on such inactivity, greatly to expand its business and then confronts defendant with a costly and burdensome action. Whitman v. Walt Disney Productions, Inc., 9 Cir., 263 F.2d 229; Potash Co. of America v. International Minerals & Chemical Corp., 10 Cir., 213 F.2d 153; Brennan v. Hawley Products Co., 7 Cir., 182 F.2d 945; Polaroid Corporation v. Polarad Electronics Corporation, D.C., 182 F.Supp. 350, affirmed 2 Cir., 287 F.2d 492; Ferroline Corp. v. General Aniline & Film Corp., D.C., 107 F.Supp. 326, affirmed 7 Cir., 207 F.2d 912; Stewart v. Finkelstone, 206 Mass. 28, 92 N.E. 37, 28 L.R.A.,N.S., 634; Doane v. Preston, 183 Mass. 569, 67 N.E. 867. The present action should be held to be barred by laches.

In the light of the allegations that plaintiff had no knowledge until the issuance of patent 2,829,268 on April 1, 1958, that defendant or anyone connected with it was applying for a patent embodying any invention claimed by plaintiff, the defenses of laches and limitations cannot be held to apply to this portion of the complaint. However, there are other grounds which justify the granting of summary judgment for defendant on this aspect of the case. The gist of plaintiff's allegations as to the patent is that Chope, on whose application the patent was granted, was not as alleged in the application the true inventor, but that the true inventors were Ayer, Clarke and Foster and that plaintiff's efforts to file a patent application in their names as assignors to plaintiff were frustrated by Foster. The relief principally sought is an order compelling defendant to assign the patent to plaintiff and to refrain, pendente lite, from asserting any rights under the patent. But if, as alleged in the complaint, the patent was issued on the application of one who was not the true inventor, the patent is unauthorized by law and void, it confers no rights on anyone and there can be no legal or equitable ownership of it. Hence the court will not order the assignment of such a patent and the relief sought by plaintiff cannot be granted even if it proves the allegations of its complaint. Kennedy v. Hazelton, 128 U.S. 667, 672, 9 S.Ct. 202, 32 L.Ed. 576; Friedman v. Washburn Co., 7 Cir., 145 F.2d 715, 718; Crook v. Bendix Aviation Corporation, D.C., 68 F.Supp. 449, 450.

Defendant's motion for summary judgment is allowed.